[Civ. No. 42134. Second Dist., Div. Two. July 18, 1973.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERT SHAY IRWIN et al., Real Parties in Interest.

COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Sidney D. Trapp, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Joseph Reichman, Charles J. Crozier, David L. Rosner and Rosner & Mandel for Real Parties in Interest.

OPINION

**COMPTON, J.**—The People have petitioned pursuant to Penal Code section 1538.5 for a writ of mandate to require the Superior Court of the

County of Los Angeles to vacate a limited order of suppression as to a portion of the evidence offered against the defendants.

The evidence which was suppressed consisted of quantities of marijuana and hashish, along with paraphernalia used to package and sell the same, taken from a house in which defendant Clyda Coovert and two other persons (neither of whom is presently a defendant in this action) were arrested on April 13, 1972. The other defendants were arrested on that same date shortly after departing in automobiles from the location in question.

Prior to making the arrests, officers of the Los Angeles Police Department had conducted a surveillance at the house in question. As a result of observations made of the defendants' conduct coupled with information which the officers had previously obtained, the trial court found, and correctly so, that by 9:45 p.m. there existed probable cause to arrest each of the defendants for violation of the narcotic laws.

At 9:45 p.m., Officer Klein, one of the arresting officers, approached the house and looked through some cracks in the door of the attached garage. There were lights on in the garage and the officer could see marijuana plants growing inside.

Following the arrest of the defendants who had left the premises, Officer Klein knocked on the door of the house, announced the purpose of his visit and demanded admittance. When defendant Clyda Coovert answered the door she was placed under arrest. At that time Officer Klein could from his position in the doorway see a scale and other paraphernalia used for the packaging and sale of marijuana sitting in plain sight on a dining room table. The two other previously mentioned persons were standing by the table. The officer went to the table and seized the items of evidence and arrested the two other persons. He there found also in plain sight a quantity of hashish, and observed a quantity of marijuana sitting in open view on a nearby shelf. Additional marijuana was found in a purse which Clyda was holding.

All of the above mentioned items of evidence and contraband were placed on the dining room table and the officer then requested permission from Clyda to search the rest of the house. When Clyda refused, Officer Klein contacted the district attorney's office to obtain assistance in seeking a search warrant. The deputy district attorney suggested that the officer attempt to get consent to search from defendant Robert Irwin.

Leaving Clyda at the home in custody of two other officers, Klein went to the police station and talked to defendant Robert Irwin. After the officer

advised defendant Irwin of his so-called *Miranda* rights, he voluntarily agreed to talk to them.

The officer then told Irwin that Clyda was in custody but still at the house; that she had refused to consent to a search of the house; that Clyda would have to remain at the house until a warrant was obtained; that in any event Clyda would ultimately be taken to the Van Nuys jail. Defendant Irwin then consented to the search stating "there wasn't anything there anyway."

The officers transported Irwin back to the house where he signed a written consent to search and provided the officers with two keys, one of which opened the garage.

The search which followed resulted in the seizure of additional quantities of marijuana and dangerous drugs, including the plants growing in the garage. On departing the scene the officers also took the items that had originally been placed on the dining room table. Approximately two to three hours elapsed between the arrest of Clyda and the time the officers returned with Irwin.

The hearing on the motion to suppress consisted solely of the testimony of the officers and no factual conflicts were presented. The trial court fully accredited the testimony of the officers but concluded as a matter of law that (1) Irwin's consent was invalid thus necessitating suppression of the additional evidence seized in the search of the house and garage, relying on *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], and (2) detention of Clyda at the house for the two to three hours while the officers talked to Irwin required suppression of the items originally seized at the time of Clyda's arrest, relying on *Shuey* v. *Superior Court*, 30 Cal.App.3d 535 [106 Cal.Rptr. 452].

In announcing his ruling, the trial judge stated: "The right to remain on the premises and hold the arrestee and while waiting for a search warrant has been cast in some doubt by the recent decision in the *Shuey* matter. . . . Since there is considerable doubt in the area, it is my judgment that the reentry without consent was unauthorized as was the conduct of the officer in remaining on the premises. Accordingly, I am going to order all of the exhibits which were found in the house and in the garage, both before and after the so-called consent was obtained, suppressed."

The People in their petition challenge only that part of the ruling which was directed to the items originally seized in conjunction with Clyda's arrest and retained on the dining room table. However, as a precautionary move the People also state that ". . . if there is any intimation in the

ruling of the trial court that [the officers' observations of the contents of the garage] were suppressed . . . that ruling should be reversed."

## The Application of Chimel

*Chimel, supra,* limited the scope of a permissible *search* conducted in conjunction with a valid arrest. The scope of such a search is limited to the person of an arrestee and the area within his immediate control, "construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (P. 763 [23 L.Ed.2d at p. 694].)

On the other hand, *Chimel* did not limit the authority of the police to *seize* evidence or contraband which is in plain view and exposure of which requires no search. (*People* v. *Block,* 6 Cal.3d 239 [103 Cal.Rptr. 281, 499 P.2d 961].)

At the time the officers here effected the arrest of Clyda, they were justified in searching the purse which she had in her hand and seizing the contraband found therein. They were also justified in seizing the evidence which was in plain view on the dining room table and shelf.

In *Block, supra,* the court quoted from *Chimel* that " 'objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure . . .' " and then proceeded to hold that the "plain sight" rule would extend to items observed while the officers were lawfully searching for additional suspects in parts of a house other than the room in which a valid arrest had been made.

Thus, in the case at bar it was proper for Officer Klein to traverse the distance from the front door where the arrest of Clyda was made to the area of the dining room table to effect the arrest of the additional suspects. More importantly, however, neither *Chimel* nor *Block* circumscribes the distance between the lawful position of the officers and the items "in plain sight" especially where, as here, the distance or field of view is unobstructed by any doors, windows or other barriers. Therefore, Officer Klein was justified in moving from the door to the table for the sole purpose of seizing the objects which he had observed and once there was again lawfully situated to observe other items "in plain view."

## The Application of Shuey

The basic facts from which the opinion in *Shuey, supra,* proceed were that officers *lacking* adequate probable cause to arrest, knocked at the

defendant's door and requested consent to search the premises for narcotics. When the defendant refused to give that consent, two officers entered the premises and detained the defendant for approximately three hours while another officer left and obtained a search warrant. No search was conducted until the arrival of the officer and the warrant. The occupation of the house and the detention of defendant were to prevent destruction of any evidence that might be on the premises.

The court concluded in *Shuey* at page 538 that "[i]n practical effect, then, the officers 'seized' everything in the apartment, and detained [defendant's] person, hoping that a search warrant would later permit them to particularize the seizure and to arrest [defendant]," and condemned the procedure that was followed. In refusing to recognize the possible destruction of evidence as an "emergency" situation, the court pointed out that the police had themselves created the emergency by knocking at the door and alerting the defendant.

The case before us is not comparable to *Shuey*. ■ Here the question is whether the officers' clear right to seize the evidence that was in plain sight at the time of the concededly valid arrest of Clyda was lost simply because they waited for two or three hours to take physical possession of the evidence and transport defendant to jail.

Assuming, arguendo, that the delay in taking defendant Clyda to jail was unreasonable and failed to comply with statutory arrest requirements, it in no way affected the obtaining of the challenged evidence and does not call for the invocation of the exclusionary rule.

In *Barajas* v. *Superior Court,* 10 Cal.App.3d 185 [88 Cal.Rptr. 730], the same division of this court which decided *Shuey* was faced with a problem which, though not exactly parallel, is more comparable to the case at bar than that in *Shuey*. In *Barajas,* the officers entered a residence, validly arrested the defendant and then detained her for about 2½ hours until a search warrant was obtained. The evidence which was obtained as a result of the search pursuant to the warrant was apparently not in plain view at the time of the original arrest. The court in *Barajas* rejected defendant's plea for suppression on the grounds that the legal arrest of the defendant permitted the officers to prevent her from gaining access to the contraband and thus frustrate the successful execution of the forthcoming warrant. While holding that such prevention should have been accomplished by taking defendant to jail rather than keeping her "prisoner in her own home," the court concluded "that illegality did not aid in the discovery of the [contraband]."

## The Officer's Observation of the Contents of the Garage

While we do not interpret the trial court's suppression order as embracing the testimony of the officer as to what he observed through the cracks in the garage door, we think it appropriate to discuss the matter in order to prevent such issue from arising at future proceedings.

█ The marijuana growing in the garage could be observed through the cracks in the door by virtue of light that someone other than the officers had left burning. The cracks or apertures were not placed there by the police for observation purposes. In *People* v. *Landry,* 276 Cal.App.2d 370 [80 Cal.Rptr. 880], it was held that police observation made through a lighted, undraped window did not constitute an unreasonable search, nor a violation of defendant's reasonable expectation of privacy. We believe the principle of that case to be indistinguishable.

The condition of the premises which facilitated the ability of the officers to observe the items in the garage negated any exhibition of the defendant's reasonable expectation of privacy. (*People* v. *Berutko,* 71 Cal.2d 84 [77 Cal.Rptr. 217, 453 P.2d 721].)

The Supreme Court's most recent pronouncement in *Lorenzana* v. *Superior Court,* 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33] marshals the numerous cases dealing with this specific problem area and treats definitively with the other prong of the rule, to wit, the status of the area from which the policeman makes his observations. The court there stated: "[T]he cases recognize the distinction between the observations of a police officer who has positioned himself upon property which has been opened to public common use, and the observations of an officer who ventures onto property which has not been so committed. A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there. The officer who walks upon such property so used by the public does not wear a blindfold; the property owner must reasonably expect him to observe all that is visible."

The record here discloses that Officer Klein at the time he observed the interior of the garage was on the driveway which leads from the street to an attached garage. The house is situated on a corner and the driveway clearly appears to qualify as "property which has been opened to public common use."

The evidence seized at the time of defendant Clyda Coovert's original arrest including the officers' observation of the marijuana growing in the

garage was not subject to suppression. Therefore, let a writ of mandate issue directing the superior court to vacate that portion of its order purporting to suppress those items.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied August 8, 1973, and the petition of the real parties in interest for a hearing by the Supreme Court was denied September 19, 1973.