[Crim. No. 23302. Second Dist., Div. One. Jan. 30, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
LUTHER C. FREENY, Defendant and Appellant.

## COUNSEL

Marks, Sherman & Schwartz, Jonathan K. Golden and Burton Marks for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—The matter at bench is an appeal from a judgment of conviction of sale of heroin (Health & Saf. Code, § 11501, now Health & Saf. Code, § 11352), two counts of possession of heroin for sale (Health & Saf. Code, § 11500.5, now Health & Saf. Code, § 11351), possession for sale of cocaine (Health & Saf. Code, § 11500.5, now Health & Saf. Code, § 11351), and possession of marijuana (Health & Saf. Code, § 11530, now Health & Saf. Code, § 11357). The appeal raises an issue of apparent first impression concerning the nature of exigent circumstances justifying police entry of a private residence to prevent the destruction of evidence while they await a search warrant. (See *Shuey* v. *Superior Court,* 30 Cal.App.3d 535 [106 Cal.Rptr. 452].) Appellant also contends: (1) he was unlawfully committed for trial by the magistrate who conducted the preliminary hearing; (2) a search of his automobile incident to his arrest was illegal; (3) the affidavit supporting a search warrant is inadequate; (4) the trial court denied him due process of law by relieving his privately retained counsel; (5) the court erred in denying his motion to sever his trial from that of his wife, a codefendant; and (6) the trial court erred in refusing to order the return of cash seized upon execution of the search

warrant. We conclude that the record establishes an emergency situation authorizing the entry of appellant's residence to prevent the destruction of evidence in the period from his arrest until a search warrant could be obtained and that appellant's other contentions lack merit.

Since appellant's contentions raise issues relating primarily to the validity of searches which disclose incriminating evidence and do not question the sufficiency of evidence to support the judgment, we recite the facts developed at a hearing to suppress evidence pursuant to Penal Code section 1538.5, accepting the trial court's resolution of all questions of credibility of witnesses and the permissible inferences drawn by it from the testimony at the hearing.

Shortly before July 22, 1971, the Los Angeles Police Department received information from George Gill that a person known as "L.C." was dealing in\narcotics. Gill was engaged as a paid informant. On July 22, 1971, Gill was "skin searched." Immediately afterward, he and Officer Gerald W. Sawyer of the Los Angeles Police Department, who was acting as an undercover investigator, went to an apartment in El Monte, arriving at about 1:15 p.m. There they met Earnest L. Freeman and Galen Leroy Mansfield. Freeman asked Sawyer if he wanted to "cop," street language asking whether Sawyer wished to buy narcotics. Sawyer replied that he had "come to score a piece," i.e.. buy an ounce of heroin. Freeman said that the price would be $325 and that he would contact "the man," i.e., in context, the supplier of narcotics. Freeman stated also that he and Sawyer would drive about 35 minutes to pick up the heroin.

Sawyer, Gill, Freeman, and Mansfield drove in the same automobile to the vicinity of Imperial and the Harbor Freeway, arriving at about 3:15 p.m. Freeman told Sawyer that Mansfield and Gill "would go to cop the stuff from L.C." Sawyer gave Mansfield $330 in recorded police department cash and received $5 change. Sawyer and Freeman left the car and proceeded to a market at Imperial and Figueroa. The car with Gill and Mansfield drove into the parking lot of the Big Bun Restaurant near that intersection. The car parked. Approximately five minutes later, appellant arrived on a motorcycle and drove into the parking lot of the restaurant. Freeman pointed him out, identifying him to Sawyer as "L.C." Followed by Sergeant Richard L. Cron, who had been monitoring Sawyer's conversations by means of a Fargo transmitter hidden on Sawyer's person, L.C. on his motorcycle and Gill and Mansfield in their automobile left the parking lot and proceeded to Denver Avenue, about 70 feet south of 113th Street. Appellant left his motorcycle and Mansfield his car. The two met. Mansfield handed "something" to appellant and appellant handed

"something" to Mansfield. Sergeant Cron, an experienced narcotics officer, believed he had seen a transaction in narcotics. Mansfield and Gill returned to Imperial and Figueroa. There Mansfield handed Sawyer a blue tissue. Inside was a sealed plastic packet containing an ounce of heroin. Mansfield told Sawyer: "If you like the stuff and it agrees with everybody, you can come back and you can cop from us as much as you need."

At about 2:30 p.m. on July 27, 1971, Sawyer and Gill again met Freeman by prearrangement to purchase heroin. Sawyer was to accompany Freeman to a meeting with L.C. and there purchase three ounces of heroin for $1,120. The officer was fitted with a Fargo transmitter. The three drove in an automobile to a telephone booth where Freeman placed a call and engaged in a lengthy conversation. He returned to the car and apologized to Sawyer for taking so long with the call. Freeman told Sawyer that Freeman had told "Margurite that he had wanted to cop x-number of ounces today, and we wanted to come down there this afternoon to do it, and we had the money ready." Freeman said that, "After I finished telling her, L.C. came in and I had to tell him everything and that is why the phone call took so long." Freeman told Sawyer, also, that "the man would not go for" the arrangement by which Sawyer was to accompany Freeman "to make the buy." Freeman stated that Sawyer should give him the cash to be exchanged for the heroin. A compromise was reached. Sawyer delivered $1,120 in recorded police department funds to Gill who Freeman agreed could accompany him to the place where the heroin would be delivered. Sawyer, Gill, and Freeman drove to a Norm's Restaurant at Manchester and Figueroa where Sawyer, at about 3:50 p.m., left the car. Gill and Freeman drove off.

Sergeant Cron monitored the conversations between Sawyer and Freeman by way of receipt of transmissions from the Fargo transmitter. He followed Gill and Freeman as they drove from the Norm's Restaurant and proceeded to a school parking lot at Hoover and 88th Street where they parked. Officer Stanford Nelson of the Los Angeles Police Department conducted a surveillance of the premises at 19018 South Broadacres in the City of Carson. He knew that the premises were occupied by appellant and his wife, Margurite Freeny. At about 4 p.m. on July 27, appellant left the house in his automobile followed by Nelson and fellow officers conducting the surveillance. The officers followed appellant to the vicinity of Denver and 87th Street. Sergeant Cody, one of those officers, informed Cron by radio that appellant had driven off from the residence and continued to keep Cron informed of appellant's movement. Appellant drove past the lot where Gill and Freeman were parked in their car. He turned around and returned northbound on Hoover to 88th Street where he

turned westbound to Orchard where he turned south and parked at the curb. At that point, Cron instructed the officers following appellant to arrest him. He was arrested. Cron saw three bulges in the floor mat of appellant's automobile located at the driver's seat. He removed the floor mat and removed three packages containing a large amount of heroin.

Sergeant Cron knew that appellant's wife, Margurite Freeny, was inside the residence from which appellant had come with the heroin found by the search of his car. He feared that in the period during which he sought and obtained a warrant to search the house, Mrs. Freeny would learn that appellant had been arrested and would destroy any narcotics in the residence. Cron therefore instructed other officers to go to the residence at 19018 South Broadacres and "gain entrance legally." He instructed them also to detain anyone inside the house and "to secure the house from any destruction of evidence." He specifically told the other officers not to conduct a search of the residence even if given permission to do so.

Officer Nelson was present at the arrest of appellant. Following the orders of Sergeant Cron, he returned to the residence at 19018 South Broadacres. His own experience told him that where a suspect was arrested on the street for a narcotics violation under circumstances similar to those existing in the case at bench, the suspect was likely to have more narcotics at his home. Reaching 19018 South Broadacres at about 5 p.m., Nelson knocked on the front door and in a loud voice said: "Police officers. We are here on a narcotics investigation. Open the door." The statement was followed by shrill female sounds emanating from within the house and the sound of footsteps running away from the door. Believing that the woman inside was attempting to destroy contraband, Nelson told Sergeant Broberg, who had accompanied him to the residence, to force entry through the door. Broberg did so. Broberg and Sergeant Ridenour entered. Ridenour ran up the stairs. Ridenour said, "She is up here," and requested Broberg and Nelson to come up. Nelson saw Ridenour and Mrs. Freeny as they came from the bathroom. Knowing that the order for the narcotics found in appellant's automobile had been placed to the Broadacres address, Nelson arrested Mrs. Freeny for possession of narcotics. She was informed of her *Miranda* rights. Mrs. Freeny stated that she understood and waived them. Nelson asked her "what she had flushed." She said: "That is all of it. Whatever that was that was in the bathroom— that I was putting into the bowl, inside the sink bowl, that is all there is." Nelson asked Mrs. Freeny what she had done with the package. She replied, "Well, it's up there." Upon Nelson's request "if she would show him the package," Mrs. Freeny escorted him to the bathroom. She lifted the seat cover over the toilet and removed a glassine package. Inside the

package was a brown liquid. From his experience with narcotics, Nelson concluded that the package had contained heroin. Nelson telephoned Sergeant Cron and gave him the information obtained during the arrest of Mrs. Freeny.

On an affidavit reciting essentially the facts stated in this opinion, including the information obtained by Cron from Nelson, a magistrate issued a warrant to search the premises at 19018 Broadacres Avenue, Carson, California, and all buildings and structures located there, and all trashcans and receptacles on the premises for narcotics, paraphernalia used to cut and prepare narcotics, documents tending to show persons in control of the premises, and "all monies derived from the illegal sales of narcotics."

Sergeant Cron returned to 19018 Broadacres with the search warrant a few minutes after midnight of July 27. In the interim from 5 p.m. when Mrs. Freeny was arrested until the warrant arrived, she remained detained in the house. Before 8 p.m., Mrs. Freeny was informed that if she wished she would be taken from the house to the police station where she would be booked. She stated she did not wish to do so. A search was conducted pursuant to the warrant after it arrived and was served. The search disclosed cocaine, heroin, marijuana, milk sugar, packaging material and equipment used to measure and package narcotics for sale. It disclosed, also, a deed to the residence showing that it was owned by appellant and Mrs. Freeny in joint tenancy.

Appellant was charged with the crimes of which he was eventually convicted. Mrs. Freeny, Freeman, and Mansfield were charged with related offenses. Appellant was bound over for trial, and his motions to dismiss the information pursuant to Penal Code section 995 and to suppress evidence discovered in the search of his automobile and the Broadacres residence were denied. After appropriate waivers, the issue of appellant's guilt was submitted on the transcript of the preliminary hearing and he was found guilty of all counts charged against him.

### Validity of Proceedings at Preliminary Hearing

■ Appellant contends that the proceedings by which he was committed for trial at his preliminary hearing are unlawful because the magistrate ordered that the record of proceedings before him to traverse the search warrant (See Pen. Code, § 1529) not be transcribed, thus denying him meaningful review by the superior court on his motion pursuant to Penal Code section 995.[1] The record does not support appellant's claim of

---

[1] There is an intimation in appellant's brief that he was denied a fair hearing at his preliminary examination because the magistrate had also issued the search warrant

reversible error by reason of the magistrate's order. Penal Code section 869 states: "The testimony of each witness [at the preliminary hearing] in cases of homicide must be reduced to writing, as a deposition, by the magistrate, or under his direction, and in other cases upon the demand of the prosecuting attorney, or the defendant, or his counsel. The magistrate before whom the examination is had may, in his discretion, order the testimony and proceedings to be taken down in shorthand in all examinations herein mentioned, and for that purpose he may appoint a shorthand reporter. . . ." The record of proceedings at the preliminary hearing indicates that the hearing included untranscribed proceedings upon appellant's motion to traverse. The record also contains the magistrate's order that a transcript of those proceedings not be inserted in the record. Nowhere in the record is there any showing that appellant made a demand pursuant to Penal Code section 869 which would have required the magistrate either to reduce the proceeding to writing as in a deposition or, at his discretion, have them reported and transcribed. The declaration of appellant's counsel in support of his motion to dismiss for irregularity at the preliminary hearing does not recite that a demand was made. Absent a demand, there is no requirement that the omitted portion of the preliminary hearing should have been transcribed. (*People* v. *Griffin,* 106 Cal. App.2d 531, 535 [235 P.2d 424].)

### Search of Automobile

■ Arguing that his conduct observed by the police on July 27 was consistent with innocent activity (see *Cunha* v. *Superior Court,* 2 Cal.3d 352, 357-358 [85 Cal.Rptr. 160, 466 P.2d 704] and *Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]), appellant contends that there was not probable cause for his arrest. He claims, also, that irrespective of his arrest, the search of his automobile exceeded the scope permitted by *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. The innocent or guilty character of appellant's conduct immediately prior to his arrest must, however, be viewed in context and not in isolation to determine if the totality of circumstances evidences probable cause to believe he was committing a crime when arrested. (*People* v. *Juarez,* 35 Cal.App.3d 631, 636 [110 Cal.Rptr. 865].) Here the evidence is that appellant had been contacted to deliver narcotics, had left his residence immediately after the contact, and had proceeded to the place where the narcotics were to be exchanged for cash. The totality of circumstances represents probable cause to believe appellant was in the course of doing what he had said he was going to do, i.e., deliver heroin. Nor is there the

---

which he sought to traverse. The record discloses no objection to the magistrate's conducting the preliminary hearing so that appellant cannot raise the issue on appeal.

slightest merit in appellant's contention that the search of his automobile incident to his arrest was excessive in scope. The rule of *Chimel* is inapplicable to searches of automobiles reasonably believed to contain contraband. (*Chimel* v. *California, supra,* 395 U.S. 752, 764, fn. 9 [23 L.Ed.2d 685, 694]; *Chambers* v. *Maroney,* 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975].)

### Sufficiency of Affidavit in Support of Search Warrant

■ Appellant contends that the affidavit in support of the search warrant is inadequate in that it does not establish reasonable cause to believe that the residence at 19018 Broadacres contained contraband. The affidavit, however, established appellant's residence there, his status as a dealer in heroin, appellant's departure from the premises to consummate a sale of a major quantity of narcotics, the sound of conduct from within the premises in response to a knock by officers on the door and an announcement of their identity indicating that something within was being disposed of, hidden, or destroyed, and observation within the residence indicative of a recent attempt to destroy contraband by flushing it down a toilet. On those facts, the magistrate issuing the warrant could properly determine that a reasonable man would entertain the strong suspicion that a quantity or narcotics, representing the remaining portion of appellant's inventory, was at his residence.

### Denial of Counsel of Choice and Denial of Motion to Sever

■ Appellant and his wife were charged as codefendants. They originally appeared in the matter at bench represented by the same privately retained, experienced trial counsel. Counsel indicated early in the proceedings that there was a conflict of interest between his clients. He consented, however, with their consent expressed in open court, to appear for both of them on pretrial motions to dismiss and to suppress evidence, upon the theory that as to those matters their interests were not adverse. After the pretrial motions were denied and as the trial date neared, counsel reiterated the existence of the conflict of interest. He refused to be pinned down by the court on whether, despite a consent by appellant and Mrs. Freeny to do so, he could adequately represent them or either of them at trial. Counsel also refused to opine whether any consent to joint or single representation given by Mrs. Freeny and appellant would be an intelligent and knowing one. Counsel's solution was a severance of the trials of appellant and Mrs. Freeny and the grant of immunity to each to testify at the trial of the other. The trial court denied the motion to sever, relieved counsel, and appointed new attorneys to represent appellant and Mrs. Freeny upon their showing of indigency.

The record supports the action of the trial court. Faced with a situation where, if it permitted original counsel to represent either or both defendants, counsel's own statements evidenced the possibility that the proceedings would be infected with error of constitutional dimension, the trial court had no alternative other than to relieve him. Appellant's suggested alternative of separate trials at which each of his clients would be granted immunity was an unacceptable one since a defendant in a criminal case is not entitled to immunity on his own motion. (See Pen. Code, §§ 1099, 1100, 1324.)

### Return of Cash

During the search of the Broadacres property pursuant to the warrant, the police seized approximately $25,000 in cash found on the premises. Acting pursuant to then section 18807 (now § 18817) of the Revenue and Taxation Code, the Franchise Tax Board, on July 28, 1971, served the Los Angeles Police Department with a notice to withhold and transmit funds of appellant due the State of California for assessed and unpaid personal income tax. The assessment was a "jeopardy" one pursuant to Revenue and Taxation Code section 18641. The Los Angeles Police Department transmitted the funds to the Franchise Tax Board pursuant to the notice. On March 9, 1972, appellant filed a "nonstatutory" motion in the criminal proceedings to recover the funds seized pursuant to the warrant. The motion sought return of the cash on the ground that it was neither contraband nor necessary to the prosecution's case. At a hearing on June 16, the prosecution informed the trial court that the money was no longer in possession of the police, having been seized by the Franchise Tax Board. On June 26, 1972, the trial court issued an order to show cause why the funds should not be returned to the court. After a hearing in which the Franchise Tax Board established its jeopardy assessment of a deficiency in personal income tax against appellant, the trial court denied the motion for return of funds. At the hearing, the court sustained objections to questions asked by appellant's counsel going to the validity of the assessment.

Citing *Buker* v. *Superior Court,* 25 Cal.App.3d 1085 [102 Cal.Rptr. 494], and arguing in addition that the jeopardy assessment provisions of the Revenue and Taxation Code are unconstitutional as a denial of due process of law, appellant claims error in the trial court's ruling. The trial court's order is correct.

*Buker* establishes the authority of the trial court conducting a criminal proceeding to order the return of funds seized under a valid search warrant

which are not necessary to the prosecution's case, but only where the funds are in the possession of the court or prosecuting authority and the moving defendant is entitled to their possession. Here the evidence establishes that appellant was not entitled to possession of the funds because of the assessment of a deficiency in personal income tax levied against him by the Franchise Tax Board. Revenue and Taxation Code section 18641 states: "If the Franchise Tax Board finds that the assessment or the collection of a tax or a deficiency for any year . . . will be jeopardized in whole or in part by delay, it may mail or issue notice of its finding to the taxpayer, together with a demand for immediate payment of the tax or the deficiency declared to be in jeopardy, including interest and penalties and additions thereto." Section 18643 of that code provides: "(a) A jeopardy assessment is immediately due and payable, and proceedings for collection may be commenced at once. . . ." Section 18643 provides, also, that the taxpayer may stay the collection of the assessment by posting a bond or other security and that "(d) The Franchise Tax Board may, prior to the time the assessment becomes final, stay collection of the whole or any amount of a jeopardy assessment if it finds that jeopardy does not exist." Revenue and Taxation Code section 18644 states that the taxpayer may, within 60 days after the mailing or issuance of the notice of jeopardy assessment, file a written petition with the Franchise Tax Board stating grounds for reassessing the tax or deficiency claimed due, and that the jeopardy assessment becomes final if no petition is filed within that time. Section 18645 of that code provides for an administrative hearing on the petition before the assessment becomes final if a petition is filed and a hearing requested.

Here the factual basis for a jeopardy assessment against appellant existed. (See *Horack* v. *Franchise Tax Board,* 18 Cal.App.3d 363, 367 [95 Cal.Rptr. 717].) Appellant makes no claim that he pursued the administrative remedies afforded him by the governing statutes so that the jeopardy assessment became final prior to the time that appellant's motion to return the funds was heard by the trial court, subject, of course, to appellant's right to proceed by claim for refund. The Los Angeles Police Department, which held the cash, was required by Revenue and Taxation Code section 18818 (formerly § 18808) to transmit appellant's funds to the Franchise Tax Board.

Appellant seeks to avoid the impact of the governing statutory scheme, arguing that it does not apply to funds of a taxpayer in the custody of the court and that the constitutional inhibition of summary provisional remedies exercised without a prior hearing as expressed in *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820], and its progeny applies to jeopardy assessments of tax. Those arguments were

resolved adversely to appellant's position in *Horack* v. *Franchise Tax Board, supra,* 18 Cal.App.3d 363. *Horack* is controlling here.

### Police Entry into Broadacres Residence

■ Appellant contends that all evidence of contraband seized pursuant to the search warrant at the Broadacres residence must be suppressed because it is the tainted product of illegal conduct of the police in entering and remaining there. He cites in support of his contention *Shuey* v. *Superior Court,* 30 Cal.App.3d 535 [106 Cal.Rptr. 452]. In *Shuey,* police officers acquired information sufficient to support a search warrant of a residence. Five days later, they went to the residence without first seeking a warrant. Knocking on the door, they announced that they were making a narcotics investigation and requested permission to search. Permission being denied by the occupant of the residence, the officers entered uninvited to "secure the premises" and prevent the destruction of marijuana they had probable cause to believe was there. One officer left to secure a search warrant while two others remained in the apartment with the occupant for about three hours while the search warrant was obtained. A search pursuant to the warrant disclosed marijuana and amphetamine. A divided Court of Appeal determined that unless it should be established on remand that execution of the warrant would have been effective if the police had not entered and occupied the residence, evidence of the contraband must be suppressed as the product of illegal police conduct. The majority in *Shuey* states, however: "We do not intimate what the correct answer should be where the police are faced with an emergency not of their own making." (*Shuey* v. *Superior Court, supra,* 30 Cal.App.3d at p. 541.)

We consider in the case at bench such an emergency not created by failure of police seasonably to secure a search warrant prior to entry of the premises to be searched. Here, prior to the events immediately preceding the arrest of appellant on July 27, the police had only a sketchy insubstantial basis of suspicion that appellant maintained his inventory of heroin at the Broadacres location. It was only when he left that residence to engage in his trade of selling heroin that there was reasonable cause to believe that the residence was his warehouse. Almost as soon at that proposition was ascertained, the police commenced the lengthy process of securing a search warrant from a magistrate. At that point, they knew that the illegal transaction in which appellant was engaged when arrested had been arranged in part by a telephone call in which his wife, known to be an occupant of appellant's residence, had participated. No reasonable man could conclude other than that Mrs. Freeny would destroy evidence of her guilt, which was equal to that of appellant, if she learned of his

arrest, nor would it be reasonable to assume she would not learn of the fact of his apprehension while the judicial process ground out the eventual search warrant.

Added to the time urgency established by the facts of the case at bench is the proposition that those facts also establish as a matter of law that probable cause to arrest Mrs. Freeny, an occupant of the Broadacres property, existed when the officers entered that property.[2] Added, also, is the fact that Mrs. Freeny's conduct, overheard by the officers when they knocked on the door of the premises and announced their identity, indicated that she had begun the destruction of evidence.

The totality of circumstances of the case at bench distinguish it from *Shuey* and establish that no illegal police conduct so taints the results of the search pursuant to the valid warrant that those results should be suppressed.

Respect for reality and the Fourth Amendment itself dictates that *Shuey* not be construed as declaring a constitutional right to destroy evidence. Rather, *Shuey* must be limited to its declared purpose of deterring police entry and occupancy of premises without a search warrant where the circumstances are such that there is no substantial risk that contraband or evidence will be destroyed or disappear while the warrant is being secured. The majority in *Shuey* in effect holds that under those circumstances the intrusion upon the right of privacy incident to the police entry and occupancy is of such magnitude that it must be deterred by denying to the social structure that employs the police its right to convict persons who violate its laws.

No such intrusion exists in the case at bench. The police here had the right to enter the Broadacres residence to arrest Mrs. Freeny for her participation with appellant in the crime for which he had just been arrested, and in fact did so for that purpose. While the arrest of Mrs. Freeny was not utilized as a basis of the trial court's decision validating the search pursuant to the warrant, it is by no means irrelevant to the ultimate decision that police entry and occupancy did not invalidate the later search pursuant to the warrant. Since the intrusion of the police into the Broadacres property was no greater than that otherwise permissible, the fact that its purpose was in part to prevent the destruction of evidence while a warrant was obtained does not render it constitutionally defective. That

---

[2]At the preliminary hearing, the magistrate concluded that Mrs. Freeny had been arrested "prematurely." No evidence of Mrs. Freeny's participation in the telephone conversation was introduced at the preliminary examination.

same rationale distinguishes the case at bench from *People* v. *Edgar,* 60 Cal.2d 171 [32 Cal.Rptr. 41, 383 P.2d 449], upon which the majority opinion in *Shuey* relies.

The conclusion which we here reach is buttressed by an analysis of *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. The majority opinion in *Chimel* precludes the general warrantless search of premises in which a suspect is arrested, while the dissent would validate the search upon the ground that otherwise evidence will be removed. We cannot ascribe to the majority in *Chimel* an intent to encourage the destruction of evidence in all cases where circumstances justify the arrest of a suspect in a residence and where the situation does not permit the arrest to be preceded by procedures to obtain a warrant for the search of the premises where the arrest is to be made. (See 395 U.S. at p. 764, fn. 9 [23 L.Ed.2d at p. 694].) A fair reading of the majority opinion in *Chimel* is that the search must be deferred until the warrant is obtained, but that in the interim between arrest and execution of the warrant the police may do what is reasonable to prevent the disappearance of evidence of the crime.

We thus conclude that the trial court did not err in denying appellant's motion to suppress evidence disclosed in the search pursuant to the warrant.

*Disposition*

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied February 25, 1974, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied April 17, 1974.