[Crim. No. 37626. Second Dist., Div. Two. June 16, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
BENJAMIN VALENCIA RODRIGUEZ, Defendant and Appellant.

COUNSEL

Rosana M. Selesnick, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTH, P. J.**—Benjamin Rodriguez appeals from the judgment (order granting probation) entered following his plea of guilty to being an accessory after the fact to another's possession of heroin (Pen. Code, § 32; Health & Saf. Code, § 11350). He contends: "The court below erred in denying appellant's motion to suppress pursuant to § 1538.5 of the Penal Code. A. The trial court's reliance on the *Ferdin* and *Freeny* cases was misplaced. B. The police failed to follow their own departmental procedure—secure the residence and obtain a warrant. C. *Ramey* overrules the *Ferdin* and *Freeny* cases."

Viewed in the light most favorable to the judgment as is required by the usual rule governing appellate review, the evidence established that Long Beach Police Officer William Swanson received a telephone call

from an unknown female tipster who indicated that for some unspecified reason she suspected narcotics transactions might be taking place at apartment 2 at 6268 Long Beach Boulevard in Long Beach. She mentioned the name "Javier" and indicated that the "heaviest traffic" occurred at approximately 3 p.m., and that stolen property might be being traded for narcotics.

Officer Swanson decided to conduct a surveillance of the designated premises and at approximately 12 p.m. on February 23, 1977, he observed a white male, Ronald Chandler, leave apartment No. 2. Chandler was followed as he drove to another location, picked up two black males and then returned to apartment No. 2 where he dropped them off. Because Chandler thereafter operated his vehicle in an erratic fashion, the officer approached him while he was obtaining gasoline in a self-service station. Swanson there concluded from the fresh marks on Chandler's arms that he was under the influence of narcotics.

A search of Chandler's person revealed a plastic bag containing "approximately an ounce of powdery substance," and a loaded .22 caliber pistol was found in his car. So far as appears, however, following his arrest, Chandler said nothing to lead the officers to believe that he had acquired the materials in the bag, assuming they were narcotics, from apartment 2 or that he realized that his arrest had any connection with that location. Consequently, he was taken to a local police station and the surveillance of the suspect premises was resumed.

In aid of this operation Officer Swanson received permission from the manager of the building to use a vacant apartment. He testified that during the next hour and a half he "observed approximately ten individuals approach the apartment, knock at the door. A male Mexican appeared through the window. The door was opened. The people would enter the apartment, stay for a matter of a few minutes, and leave." On one occasion a male and female had entered carrying hangers on which were men's slacks with tags on them.

Officer Swanson's testimony continued: "At that point we contacted the other surveilling officers by radio and indicated that we were going to go to the front door of the apartment *to conduct an investigation.* At that point we requested Mr. Talavera or Officer Talavera, who spoke Spanish, to go to the door by himself in an attempt to get the door open without any problems." (Italics added.)

Officer Hernando Talavera proceeded to the door of apartment 2, knocked and when a person looked out the window he asked if "Javier was there." He received an affirmative reply and the front door was opened but the screen door remained locked. Officer Swanson then approached the door, identified himself as a police officer and demanded that the door be opened. The basis, if any, for his belief that he had authority to make such a demand was neither explained to the residents nor to the court below. When the persons within the apartment elected not to comply with this demand, but instead began running, Officer Swanson broke open the screen door and entered the apartment. Ultimately certain evidence was recovered inside that apparently tended to incriminate appellant in some way.

■ Appellant's contention that our Supreme Court's decision in *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], "overruled" the holdings in *People* v. *Freeny* (1974) 37 Cal. App.3d 20, 32-33 [112 Cal.Rptr. 33], and *Ferdin* v. *Superior Court* (1974) 36 Cal.App.3d 774, 781-782 [112 Cal.Rptr. 266], relating to "securements" is wholly unpersuasive. On the contrary, the doctrine of securing premises pending issuance of a search warrant is based upon the same emergency concept fully recognized in *Ramey* as an exception to the rule therein enunciated. (*People* v. *Ramey, supra*, at p. 276.)

Here, however, as appellant correctly noted below, the officers did not claim that their decision to force a confrontation at the subject apartment was based upon any emergency concept or, for that matter, that they even intended to, or believed they had cause to, search that apartment or to arrest anyone that might be within. To the extent that their actions created an emergency it was of the "'do-it-yourself' variety" condemned in *People* v. *Shuey* (1975) 13 Cal.3d 835, 849 [120 Cal.Rptr. 83, 533 P.2d 211].)

The suggestion that the arrest of the apparent addict, Chandler, some hour and a half earlier, created a situation in anywise comparable to those involved in *Freeny* and *Ferdin*[1] is without foundation. As indicated, the police did not suggest that they believed Chandler's arrest was in any way a risk to their continuing investigation and surveillance of apartment 2. If they had, of course, they could have, and would have, instituted proceedings to obtain any necessary warrants at that time.

[1]See also *People* v. *Superior Court* (*Irwin*) (1973) 33 Cal.App.3d 475, 479-480 [109 Cal.Rptr. 106], and *Barajas* v. *Superior Court* (1970) 10 Cal.App.3d 185, 189 [88 Cal.Rptr. 730].)

In truth, of course, it is clear that the officers did not have, nor did they claim to believe they had, any cause sufficient to justify their forced entry, with or without seeking prior judicial approval, until after they had demanded that the door thereto be opened in connection with their continuing investigation.

Long prior to *Ramey*, it was recognized that even a suspect has no duty to cooperate with officers in securing evidence against him and is entitled to have a "magistrate determine whether there is justification for invading the privacy of his home. [Citations.]" (*People* v. *Shelton* (1964) 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665].)

The judgment (order granting probation) is reversed.

Fleming, J., concurred.

**COMPTON, J.**—I dissent.

The record in this case is replete with evidence that the officers had probable cause to believe that a felony was being committed on the premises where the arrest was made. The majority, relying on *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], feel compelled to hold that, nevertheless, the officers' entry into the premises was unreasonable.

In my opinion, this is just another one of the absurd results which flow from the exclusionary rule. Whatever value the exclusionary rule may be said to have, its stated primary purpose is to provide a protection against *unreasonable* intrusions into the homes of law-abiding citizens. The judicial engrafting of the concept of *Ramey* onto the fundamental rule is supposed to achieve this objective.

In my opinion, constitutional liberties are not advanced one iota by endowing the transient occupancy of motel accommodations under the circumstances of this case with the attributes of a "home and castle." It is obvious that these individuals were using the premises to operate what amounted to a volume store-front business of trading narcotics for stolen property. While they may have sought privacy, they are entitled to none.

The very experienced trial judge in this case made a factual determination that the conduct of the officers was reasonable and that even

accepting the application of *Ramey*, the evidence disclosed the existence of exigent circumstances. In my opinion, the trial judge applied the proper test and it ill behooves this court to second guess him and override his factfinding powers.

A petition for a rehearing was denied July 10, 1981. Compton, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied August 12, 1981.