176 Cal.App.3d 1127 (1986)
224 Cal. Rptr. 145
THE PEOPLE, Plaintiff and Respondent,
v.
JOSE ROBERTO MENDOZA, Defendant and Appellant.
Docket No. G001489.
Court of Appeals of California, Fourth District, Division Three.
January 24, 1986.
*1128 COUNSEL
Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.
*1129 John K. Van de Kamp, Attorney General, and Robert M. Foster, Deputy Attorney General, for Plaintiff and Respondent.
OPINION
CROSBY, J.
This case presents difficult search and seizure issues involving the warrantless entry of a home and search of a shoulder bag found inside.

I
About 3:15 p.m. on June 22, 1983, Carl Vidano, a Huntington Beach narcotics sergeant, received a tip from a reliable informant that a Latin male named Jose, driving a white Volkswagen Jetta, would deliver at least a pound of cocaine to a certain home on Loclea Avenue within an hour. Vidano had known the informant for more than 4 years, and he had supplied reliable information on at least 10 previous occasions which led to the arrest of some 13 persons in narcotics related cases.
Vidano identified the occupant of the residence (not the defendant) via a utility company and set up a surveillance of the premises with two other narcotics officers within the hour. Three vehicles were parked in front. About 20 minutes later, Jose Mendoza arrived in a fourth, a white Volkswagen Jetta. Carrying a tan cloth shoulder bag, he entered the house.
Vidano met two uniformed patrol officers several blocks away. He had decided to "[s]ecure the residence and conduct a narcotics investigation." He believed there was insufficient time to obtain a search warrant. When the police vehicles  some of them marked  pulled up in front of the house, a man standing in the entryway yelled and ran inside. Vidano rushed to the front door, gun in hand, and announced, "police officers, narcotics investigation." He entered without knocking and followed the fleeing man into a bathroom where he found two other individuals, including Mendoza.
The men were then advised of their rights and questioned about the shoulder bag, which the officers found on the floor about six feet inside the front door. The zipper was open and several closed paper bags were visible inside. Mendoza stated he did not live in the house and had never seen the bag before; the others also disclaimed any interest in, or ownership of, the shoulder bag. The officers proceeded to search it and discovered three paper bags inside, each containing a plastic bag of cocaine.
*1130 Mendoza's motion to suppress was denied at the preliminary hearing and again in the superior court, where the prosecution conceded he had standing to make the motion. In the latter proceeding the trial judge appeared to apply a version of CATCH-22; if the bag was Mendoza's, it was properly subject to search incident to arrest. If it was not his because it had been abandoned, it could be searched for that reason: The court stated, "either [the shoulder bag] was abandoned property, or if it wasn't, it was so closely associated with the defendant that it was incident to arrest."
Mendoza pleaded guilty to possession of cocaine for sale after his motion to suppress was denied. He asserts the entry into the home was unlawful because the officers had no warrant or lawful excuse, such as exigent circumstances, and they did not comply with the knock-notice requirements of Penal Code section 844. He also claims the warrantless search of the bag was unlawful.

II
(1) A warrantless arrest in the home is per se unreasonable absent exigent circumstances. (Payton v. New York (1980) 445 U.S. 573, 590 [63 L.Ed.2d 639, 653, 100 S.Ct. 1371]; People v. Ramey (1976) 16 Cal.3d 263, 275-276 [127 Cal. Rptr. 629, 545 P.2d 1333].) "`[E]xigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of extraordinary situation must be measured by the facts known to the officers." (People v. Ramey, supra, at p. 276.)
(2) We find abundant exigent circumstances here. Vidano had probable cause to believe a crime was occurring based on the informant's story confirmed by his own observations. He had at least two perfectly legal avenues available to him: He could seek a search warrant, or he could approach the occupants in order to question them concerning his information. Although Vidano apparently believed the situation was grave enough to justify a third alternative, occupation of the home pending arrival of the warrant, we need not consider that question. Events outstripped the occupation plan and reduced it to irrelevance.
When the officers arrived in front of the residence (as they had a perfect right to do), the precipitate action of the man in the entrance to the house who ran inside yelling upon sight of them supplied the additional circumstance  if any were needed  to justify a seizure of the home and its occupants. These exigent circumstances were not of the "do-it-yourself" variety *1131 condemned in Shuey v. Superior Court (1973) 30 Cal. App.3d 535 [106 Cal. Rptr. 452]. (See also People v. Shuey (1978) 13 Cal.3d 835 [120 Cal. Rptr. 83, 533 P.2d 211]; People v. Rodriguez (1981) 123 Cal. App.3d 269, 272 [176 Cal. Rptr. 798].)
An individual who chooses to run from an officer under suspicious circumstances may by that act provide probable cause to detain or arrest and even to enter a structure without notice to prevent the escape of the suspect or his acquisition of weapons or destruction of evidence. In Shuey, when police presented themselves at his residence to investigate days-old information, the defendant answered the door but exercised his right to refuse consent to a search. The police then occupied his home until the warrant was acquired. The prosecution sought to excuse the occupation on the claimed exigent circumstance that police interest chez Shuey had now been revealed. The court, however, labeled this bootstrapping effort as a "do-it-yourself" emergency.
This case may be distinguishable from Shuey, even in the absence of the suspect's flight from the front door; certainly there was far less time to secure legal process here, for example. We need not rest our decision on that distinction, however. Whether Vidano was on legally sound ground in contemplating the occupation of the home at the outset is of no importance. The actions, or reactions, of the man observing the arriving officers created an exigency not attributable to the officers. They had every right to approach the home. When precipitous behavior indicating flight and possible destruction of evidence was added to the already existing probable cause, their reaction was justified.
As to the alleged violation of Penal Code section 844, there are two answers: First, the same emergency which permitted the entry itself also excused strict knock-notice compliance. Second, there was no breaking here. Vidano entered an open door. Even a mild exigency would have justified this action. (United States v. McConney (9th Cir.1984) 728 F.2d 1195, cert. den. 469 U.S. 824 [83 L.Ed.2d 46, 105 S.Ct. 101]; United States v. Bustamante-Gamez (9th Cir.1973) 488 F.2d 4, cert. den. (1974) 416 U.S. 970 [40 L.Ed.2d 559, 94 S.Ct. 1993].)

III
The search of the bag after the entry and arrests presents a somewhat more difficult issue. It was, of course, proper to place the bag in police custody; the question is, was it permissible to search it without a warrant? The trial court thought so, either as a search incident to arrest or because the bag was abandoned.
*1132 (3) The search incident to arrest exception to the warrant requirement, however, is limited in time and place. (Chimel v. California (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) The search must be contemporaneous (Arkansas v. Sanders (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586]; United States v. Chadwick (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]), and it may "not stray beyond the area within the immediate control of the arrestee." (New York v. Belton (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]; People v. Gutierrez (1984) 163 Cal. App.3d 332, 335 [209 Cal. Rptr. 376].) In People v. Flores (1979) 100 Cal. App.3d 221 [160 Cal. Rptr. 839], for example, the defendant was arrested in a motel lobby on a warrant. As the officers approached he lunged toward a shoulder bag at his feet, putting a hand in one of the pockets. The search of the bag was lawful incident to his arrest. (Id., at p. 230.)
This search was reasonably contemporaneous in terms of time, but what about place? Mendoza was taken from the bathroom into the presence of the shoulder bag. If the Chimel rule could be so easily satisfied, the officers would only have to force the defendant to accompany them while they proceeded to examine the entire contents of the premises. On the other hand, the bag was located near the front door. To exit the way they came in, the officers might have had to take the arrestees near the bag in any event. But, of course, they could have removed the bag first. As with most other legal doctrines, that of Chimel can be reduced to logical absurdity if one is so disposed. Returning to the original rationale of Chimel, we cannot condone the search of the bag under its holding. The arrestees could not have obtained a weapon or destroyed contraband in the shoulder bag from the place they were brought under police control, the bathroom.
Neither are we persuaded by the trial court's abandonment theory, at least as that term is usually applied in search and seizure lore. Abandonment is found with respect to items left in motel rooms with expired rent (People v. Ingram (1981) 122 Cal. App.3d 673 [176 Cal. Rptr. 199]) and returned rental cars (People v. Smith (1966) 63 Cal.2d 779 [48 Cal. Rptr. 382, 409 P.2d 222]), or in cases where personal property is discarded in plain view without police compulsion (People v. Sirhan (1972) 7 Cal.3d 710 [102 Cal. Rptr. 385, 497 P.2d 1121]; People v. Patrick (1982) 135 Cal. App.3d 290 [185 Cal. Rptr. 325]). None of these situations is comparable.
A shoulder bag reposing on the floor of an occupied residence hardly presents the indicia of abandonment. Someone had a reasonable expectation of privacy in the bag: "Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage *1133 is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile." (United States v. Chadwick, supra, 433 U.S. at p. 13 [53 L.Ed.2d at p. 549].)
(4) Nonetheless, we believe Mendoza's attack on the search must fail. After waiving his Miranda rights, he chose to deny any knowledge of the bag and any ownership interest, as did the other two arrestees. In essence, Vidano was told Mendoza "gave up any reasonable expectation of privacy" on his part when he denied knowledge of the bag at the scene. This case is thus similar to People v. Vasquez (1983) 138 Cal. App.3d 995, 1001 [188 Cal. Rptr. 417] and People v. Haugland (1981) 115 Cal. App.3d 248, 275 [171 Cal. Rptr. 237]. Although not asked to consent to searches of closed containers in their possession, pillowcases in one instance and a briefcase in the other, defendants in those cases eschewed any expectation of privacy in the containers by their own statements. This similarity also distinguishes the present facts from those of Chadwick and Sanders.[1] Mendoza's behavior in disclaiming any interest in the bag, virtually the equivalent of an implied consent to search,[2] has no factual counterpart in those cases.
Judgment affirmed.
Trotter, P.J., and Wallin, J., concurred.
Appellant's petition for review by the Supreme Court was denied April 3, 1986.
NOTES
[1] Before this state's exclusionary rule was repealed by Proposition 8 (In re Lance W. (1985) 37 Cal.3d 873 [210 Cal. Rptr. 631, 694 P.2d 744]), Mendoza could have asserted the rights of another in the shoulder bag. (Kaplan v. Superior Court (1971) 6 Cal.3d 150 [98 Cal. Rptr. 649, 491 P.2d 1].) For example, he could have attacked his own unauthorized consent to a search of another's property by asserting the owner's privacy interests. Now, however, that argument is not available to him. He may only assert his personal expectation of privacy, and that he gave up.

The prosecution's concession of "standing" does not affect the analysis. The right to attack a search does not include a guarantee of success. As in Haugland or any traditional consent case, a defendant with unquestioned standing in the procedural sense may still be determined to have relinquished any expectation of privacy.
[2] See, e.g., People v. Harrington (1970) 2 Cal.3d 991 [88 Cal. Rptr. 161, 471 P.2d 961], People v. Nelson (1985) 166 Cal. App.3d 1209 [212 Cal. Rptr. 799], and People v. Hackett (1981) 115 Cal. App.3d 592 [171 Cal. Rptr. 320].