810 So.2d 972 (2002)
STATE of Florida, Appellant,
v.
Donald DUHART, Appellee.
No. 4D01-1343.
District Court of Appeal of Florida, Fourth District.
February 6, 2002.
Rehearing Denied April 2, 2002.
*973 Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellee.
SHAHOOD, J.
Appellant, State of Florida, appeals an order granting appellee's motion to suppress. Holding that the trial court abused its discretion in granting appellee's motion to suppress, we reverse and remand for proceedings consistent with this opinion.
In this case, the state charged appellee, Donald Duhart, by information with grand theft of a motorcycle. Appellee filed a motion to suppress the motorcycle that was seized, as well as any statements he may have made to the law enforcement officers.
At the hearing on the motion, the arresting officer testified that he was dispatched to appellee's residence after receiving an anonymous call that a black male was in his garage removing parts from a stolen motorcycle. The caller gave a specific address and indicated that the black male was not wearing a shirt. Upon arriving at the address, the officer observed appellee and one other person removing parts from a motorcycle. Appellee did not have a shirt on.
The officer approached appellee, asked him for identification, and asked whether he had a title to the motorcycle. Appellee answered that he did not, so the officer entered the garage without a search warrant or appellee's invitation to do so. The officer retrieved the Vehicle Identification Number (VIN) from the motorcycle. After running the number through the teletype, the officer confirmed with the Fort Lauderdale Police Department that the motorcycle was stolen out of Fort Lauderdale. Thereafter, he placed appellee under arrest and read him his Miranda rights. Based on this evidence, the trial court granted appellee's motion to suppress.
In considering whether one's Fourth Amendment rights have been violated, the analysis is whether that person has a "constitutionally protected reasonable expectation of privacy." Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Although it is well settled that one has an expectation of privacy in his home or its curtilage, the Fourth Amendment is not necessarily a protection in areas of the home, as in this case, which are open and exposed to public view. See, e.g., Koehler v. State, 444 So.2d 1032 (Fla. 1st DCA 1984)(no expectation of privacy on unenclosed front porch which was exposed to public view); State v. Detlefson, 335 So.2d 371 (Fla. 1st DCA 1976)(no reasonable expectation of privacy on front porch of home where delivery men and others were free to observe plants thereon).
In this case, although the area where appellee was working was repeatedly referred to as a garage, the officer actually described it as a covered open area that was attached to the house, more like a carport. Appellee could not have had a *974 reasonable expectation of privacy under these circumstances.
Both the Florida Supreme Court and the United States Supreme Court have held that a vehicle registration number on the outside of a vehicle is considered to be in plain view, even if one must use a flashlight or bend down to view the numbers. See Ramer v. State, 530 So.2d 915, 918 (Fla.1988)(citing New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986))(looking under the car to obtain the VIN number is not a factor which makes the search unreasonable).
Hence, since the officer was lawfully on the premises and the VIN number was in plain view, appellee's Fourth Amendment rights were not violated. Consequently, the seizure was valid and the trial court erred in granting appellee's motion to suppress.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
POLEN, C.J., concurs.
KLEIN, J., dissents with opinion.
KLEIN, J., dissenting.
I respectfully dissent. The trial court found that when the officer entered the carport he violated the Fourth Amendment. The only basis on which the majority could reverse that finding is if a carport visible from the street is, as a matter of law, not part of the curtilage for purposes of the Fourth Amendment. I cannot agree with that proposition.
The burden on the motion to suppress in the present case was initially on the defendant to establish his standing to claim an illegal search or seizure by showing he had a legitimate expectation of privacy in the area searched. United States v. Mancini, 8 F.3d 104 (1st Cir.1993). Once the defendant establishes standing, the burden shifts to the state to show that entry without a warrant does not violate the Fourth Amendment. United States v. Perea, 986 F.2d 633 (2d Cir.1992). State v. Morsman, 394 So.2d 408 (Fla.1981).
The state apparently conceded that the defendant in the present case had standing because the hearing began with the state putting on its evidence. The state may have assumed that the defendant had standing because in his motion to suppress the defendant referred to the area of his home where he was working as a garage and the officer who testified described it as a garage. The officer ultimately clarified that it was an open covered area attached to the house. There was no evidence as to whether it was open on all sides which were not common with the home.
In United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Supreme Court established four factors to be used to determine, for purposes of search and seizure, whether a particular area constitutes curtilage. The factors are: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing." Id. at 334-35, 107 S.Ct. 1134.
The fact that activities carried on within a carport can easily be seen from the sidewalk or street is thus only one factor. If this attached carport had been a garage with the door up, in which the same activity was occurring and it was just as visible from the street, the officer could not have walked in in order to look at the VIN number on the motorcycle. A garage attached to a residence is part of the curtilage for Fourth Amendment purposes. As the court explained in United States v. Oaxaca, 233 F.3d 1154, 1157 (9th Cir. 2000):

*975 We can conceive of no reason to distinguish a garage, where people spend time, work, and store their possessions, from a den or a kitchen, where people spend time, work, and store their possessions. Simply put, a person's garage is as much a part of his castle as the rest of his home.
If the defendant had been working on the motorcycle on his front porch, the officer could have gone on the porch without a warrant because "it is clear that one does not harbor an expectation of privacy on a front porch where salesman or visitors may appear at any time." State v. Morsman, 394 So.2d 408 (Fla.1981). As La-Fave explains: "It is not objectionable for an officer to come upon that part of the property which `has been open to common public use.'" Wayne R. LaFave, Search and Seizure § 2.3(e) at 499 (3d Ed.1996)(citing People v. Superior Court, 33 Cal.App.3d 475, 109 Cal.Rptr. 106 (1973)).
Whether an officer can enter an attached carport depends on whether the carport is analogous to the front porch at a home's entrance, i.e., open to the public.
There are no Florida cases addressing the issue of whether an attached carport is part of the curtilage for purposes of search and seizure. There are two cases involving the issue of whether a theft from an attached carport constitutes burglary. State v. Burston, 693 So.2d 600 (Fla. 2d DCA 1997); Small v. State, 710 So.2d 591 (Fla. 4th DCA 1998). In Burston the carport was held to be part of the curtilage, and there was accordingly a burglary. In Small the carport was held not to be a structure, and there was no burglary. Burglary cases, however, do not necessarily control search cases because the word "curtilage" in the burglary statute must be interpreted narrowly, i.e., liberally in favor of the defendant, under principles of lenity. State v. Hamilton, 660 So.2d 1038 (Fla. 1995).
One fact which has been deemed significant in determining whether a carport is part of the curtilage is whether there is a door from the carport into the house, which makes the carport similar to a front porch where the public may be expected to come. State v. Wilbourn, 364 So.2d 995 (La.1978). The officer did not observe a door to the carport in the present case. Another factor, of course, is visibility from the street; however, it has been held that entering a carport behind a townhouse, accessible by a public alley and visible from the alley, violates the Fourth Amendment. Kann v. State, 694 S.W.2d 156 (Tex.Ct.App.1985).
Whether an officer can go on a driveway in order to check the license plate of a car parked in the driveway depends on the accessibility and visibility of the driveway from the street. Maisano v. Welcher, 940 F.2d 499 (9th Cir.1991); United States v. Smith, 783 F.2d 648 (6th Cir.1986). In this case there was no evidence as to the length or the configuration of the driveway.
As I noted earlier, the state apparently conceded that the defendant had standing, i.e., an expectation of privacy in the area searched. At that point the burden was on the state which could have established that the officer's entry into the carport was constitutional by showing that the carport, under the Dunn factors, was not part of the curtilage. The mere fact that the carport was visible from the street was not, in my opinion, sufficient to carry the state's burden. I would affirm the trial court's finding that this search violated the Fourth Amendment.