530 So.2d 915 (1988)
Ralph RAMER, Petitioner,
v.
STATE of Florida, Respondent.
No. 70110.
Supreme Court of Florida.
August 18, 1988.
Rehearing Denied September 28, 1988.
Philip G. Butler, Jr., West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Amy L. Diem, Asst. Atty. Gen., West Palm Beach, for respondent.
OVERTON, Judge.
This is a petition to review State v. Ramer, 501 So.2d 52 (Fla. 4th DCA 1987). The major issue concerns the authority of a municipal police officer to conduct a search and seizure outside the city limits without knowledge or specific direction by the sheriff. The district court held that section 30.09(4), Florida Statutes (1985), authorized a municipal police officer, who was also a special deputy under that section, to conduct a warrantless search in an unincorporated area of West Palm Beach County. This construction substantially expands the responsibility of sheriffs for their appointed *916 special deputies and, as such, affects a class of constitutional officers. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed, we quash the district court's decision and find the officer had no authority for his actions under these circumstances.
The necessary facts are as follows. West Palm Beach Police officials ordered a municipal police sergeant, who was also a special deputy sheriff, to investigate a possible stolen or abandoned vehicle located outside the municipal boundaries of West Palm Beach. The vehicle was parked in an apartment parking lot on private property. Accompanied by an agent from the National Auto Theft Bureau, a private insurance organization specializing in the location and retrieval of stolen cars, the sergeant located the automobile and directed the agent to crawl under the chassis and obtain the confidential vehicle identification number (VIN) off the frame. After obtaining the VIN, the agent contacted his Atlanta, Georgia, office and was told the vehicle had been reported stolen. Based on this information, the police sergeant seized the vehicle and had the vehicle towed to the West Palm Beach police station, where an inventory search was conducted without a warrant.
At the time of this event, the sergeant had been a police officer with the West Palm Beach Police Department for eighteen years. He testified that in March, 1983, he was sworn in as a special deputy sheriff under section 30.09, Florida Statutes (1981), and had been a special deputy ever since. The sergeant explained that, to retain his special deputy status, he merely renewed the card every year. His oath of office was not readministered, nor was he required to post a bond.
Based in part on evidence seized from the automobile, Ramer was indicted for murder. Before the trial court, Ramer moved to suppress the physical evidence discovered in the search. The trial court granted the motion on the grounds that (1) the search and seizure were illegal because the police department lacked authority to act outside its jurisdiction and (2) the vehicle was illegally searched and the evidence seized without a search warrant. On appeal, the Fourth District Court of Appeal reversed on both points. The court determined that the municipal police officer had authority to act as a special deputy in this instance, concluding that "exceptions (a) through (g) merely list the circumstances under which the provisions for bonds and sureties, etc., of section 30.09 are not applicable. Such exceptions do not restrict the activities of a special deputy solely to those listed," 501 So.2d at 53, relying on State v. Campbell, 427 So.2d 765 (Fla. 2d DCA 1983). As to the second point, the district court found "the agent's conduct in obtaining the confidential VIN did not, under the facts of this particular case, violate constitutional prohibitions against unreasonable searches and seizures." Ramer, 501 So.2d at 53.
We address first the authority of this West Palm Beach municipal police officer to search and seize this vehicle by reason of his special deputy status.
The phrase "special deputy sheriffs" is found only in section 30.09(4). That section reads:
(4) EXCEPTIONS  The provisions of this section, and of s. 30.08, shall not apply to the appointment of special deputy sheriffs when appointed by the sheriff, under the following circumstances:
(a) On election days, to attend elections.
(b) To perform undercover investigative work.
(c) For specific guard or police duties in connection with public sporting or entertainment events, not to exceed thirty days; or for watchman or guard duties, when serving in such capacity at specified locations or areas only.
(d) For special and temporary duties, without power of arrest, in connection with guarding or transporting prisoners.
(e) To aid in preserving law and order, or to render necessary assistance in the event of any threatened or actual hurricane, fire, flood, or other natural disaster, or in the event of any major tragedy *917 such as an airplane crash, train or automobile wreck, or similar accident.
(f) To raise the power of the county, by calling bystanders or others, to assist in quelling a riot or any breach of the peace, when ordered by the sheriff or an authorized general deputy.
(g) To serve as a parking enforcement specialist pursuant to s. 316.640(2).
The appointment of any such special deputy sheriff in any such circumstance, except with respect to paragraph (g), may be made with full powers of arrest whenever the sheriff deems such appointment reasonable and necessary in the execution of the duties of his office. Except under circumstances described in paragraphs (a), (e), (f) and (g), the appointee shall possess at least the minimum requirements established for law enforcement officers by the Criminal Justice Standards and Training Commission. The appointment of any such special deputy sheriff shall be recorded in a register maintained for such purpose in the sheriff's office, showing the terms and circumstances of such appointment.
A regular deputy appointed under section 30.07 is not so restricted,[1] and must fulfill the requirements of section 30.09(1)(a).[2]
The district court relied on the Second District's decision State v. Campbell, 427 So.2d 765 (Fla. 2d DCA 1983). We find Campbell clearly distinguishable. In that case, although the court permitted Tampa Police Department agents to perform arrests outside of Tampa in Hillsborough County, the officers were performing undercover investigative work, an activity expressly permitted by section 30.09(4)(b). The testimony in Campbell established that both officers had taken oaths, executed surety bonds, and held authorized cards identifying them as special deputies with the Hillsborough County Sheriff's Department.
We note that the Fourth District Court of Appeal, in State v. Carson, 374 So.2d 621 (Fla. 4th DCA 1979), contrary to that court's decision in the instant case, approved the suppression of evidence because it was based on an illegal arrest made by a municipal police officer outside his jurisdiction. In Carson, the state claimed the officer's prior status as a special deputy attached to the county sheriff's office legalized the arrest. The district court rejected this argument and stated: "We believe the evidence supports the trial court's ruling that the officer was not authorized to make the arrest by reason of his status as a special deputy, since the arrest did not occur while the officer was `assigned to specific duties.'" Id. at 622. Cf. 1981 Op.Att'y Gen.Fla. 081-5 (Feb. 3, 1981); 1974 Op.Att'y Gen.Fla. 074-280 (Sept. 18, 1974); 1972 Op.Att'y Gen.Fla. 072-321 (Sept. 15, 1972); 1972 Op.Att'y Gen.Fla. 072-381 (Oct. 31, 1972) (discussing the appointment and duties of special deputy sheriffs under section 30.09(4)). Consistent with the facts in the instant case, there was no showing in Carson that the police officer was performing any of the specific duties set forth in section 30.09(4).
If we accepted the state's argument and the district court of appeal's decision, county sheriffs who appoint special deputies would be granting them unrestrained power and, as illustrated in this case, would be delegating part of their law enforcement *918 functions to municipal police officials. Further, county sheriffs would be responsible for the special deputies' actions, without adequate means to supervise their activity. This situation is exemplified by the instant case, where a municipal police sergeant's superiors sent him into an unincorporated area to conduct a search and seizure without any showing that the sheriff knew about or authorized this activity.
It is clear under the facts of the instant case that the municipal police sergeant was not performing any of the activities enumerated under section 30.09(4) when he investigated the vehicle on private property and, consequently, he was not authorized to seize the vehicle and have it moved to the police department. The state argues in the alternative, if the sergeant was not authorized as a special deputy, he was acting as a private citizen and the search triggered no fourth amendment violation. We must disagree. There is no right, either statutory or in common law, which permits a private citizen to enter private property and seize an automobile without a warrant on a belief that the automobile is either stolen or contains evidence of a crime. Collins v. State, 143 So.2d 700 (Fla. 2d DCA 1962).
We do agree with the district court that, if the police officer was acting within his authority, obtaining the confidential VIN number by looking under the vehicle would not be an improper search without a warrant. We find no expectation of privacy in a VIN number on the outside of a motor vehicle. See New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). Looking under the car to obtain the VIN number is not a factor which makes the search unreasonable.
For the reasons expressed, we quash that part of the district court of appeal's decision holding that the municipal police officer had authority to make this search and seizure outside his jurisdiction and remand for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents.
NOTES
[1] Section 30.07, Florida Statutes (1987), reads as follows:

Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible.
[2] Section 30.09(1)(a), Florida Statutes (1987), provides:

Each deputy sheriff, appointed as aforesaid, shall be required to give bond in the penal sum of $1,000, payable to the Governor of Florida and his successors in office, with two or more good and sufficient sureties, to be approved by the board of county commissioners and filed with the clerk of the circuit court, which bond shall be conditioned upon the faithful performance of the duties of his office. No deputy sheriff shall be allowed to perform any services as such deputy until he shall subscribe to the oath now prescribed for sheriffs and until the approval of his bond. The aforesaid sureties shall be liable for all fines and amercements imposed upon their principal.