Chief Clarence L. Bass Edgewood Police Department 405 Larue Avenue Edgewood, Florida 32809
Dear Chief Bass:
You ask substantially the following questions:
Under what circumstances may a municipal police department provide law enforcement services to another municipality?
In sum:
While a mutual aid agreement entered into pursuant to Part I, Chapter 23, Florida Statutes, allows one municipality to provide assistance to another municipality on a specified, limited basis, there is no statutory authority for the complete transfer of law enforcement services from one municipality to another where supervision and control of the services are vested in the municipality providing such services. In instances where a municipality has no police department and seeks to contract for law enforcement services, the municipality may contract with the sheriff whose jurisdiction includes the city.
You state that a municipality adjoining the City of Edgewood has no police department and currently hires off-duty sheriff's deputies to provide patrol services. In light of potential increased costs of obtaining police services from the county, the municipality wishes to contract with the City of Edgewood to provide such services. Several issues have been raised regarding this arrangement, including whether Edgewood police officers would have to be sworn by the other municipality or whether a mutual aid agreement would have to be used.
Article VIII, section 2(c), Florida Constitution, provides that the "exercise of extra-territorial powers by municipalities shall be as provided by general or special law." Thus, the grant of municipal home rule powers does not extend to the exercise of extraterritorial power.[1] The powers of a municipality, including its police powers, generally cease at the municipal boundaries and cannot, absent statutory authorization, be exercised outside the city's limits.[2]
This office in Attorney General Opinion 71-72 (1971) concluded that a municipal police officer outside the corporate limits of the city could not conduct a criminal investigation, unless such officer worked in partnership with a law enforcement agency having jurisdiction over the subject of the investigation and the place. The opinion recognized that a municipal police officer lacks any power or authority as a police officer in any part of the state beyond the corporate limits of the city where the officer is employed, and any action by the officer would be subject to review as if it were the action of a private citizen.
The Legislature has provided statutory authority for municipal police officers to exercise their powers extraterritorially under certain circumstances. For example, section 901.25, Florida Statutes, authorizes a municipal police officer to make arrests outside the officer's jurisdiction, if the officer is in fresh pursuit.[3] Additionally, a municipal police officer may patrol municipally-owned property and facilities that are located outside of the municipal boundaries, and "when there is probable cause to believe a person has committed or is committing a violation of state law or of a county or municipal ordinance on such property or facilities, may take the person into custody and detain him in a reasonable manner and for a reasonable time."[4]
Section 4, Article VIII, State Constitution, provides for the transfer or contracting of powers among counties, municipalities, or special districts. Pursuant to this constitutional provision:
By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
This office has stated, however, that sections 2 and 4 of Article VIII, State Constitution, must be read together when a municipality transfers or contracts out municipal functions or powers.[5] Thus, while a municipality may seek to transfer its police power or function by using section 4, Article VIII, it is bound by the requirement of a special or general law authorizing the exercise of extraterritorial powers prescribed in section 2, Article VIII.
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," creates a state law enforcement mutual aid plan that provides for the coordination of law enforcement planning, operations, and mutual aid.[6] To carry out this plan, the Legislature has found it necessary to "allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[7]
Section 23.1225(1)(a), Florida Statutes, defines one type of mutual aid agreement as:
A voluntary cooperation agreement, in writing, between two or more law enforcement agencies which permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency, and any other terms and conditions necessary to give it effect. An example of the use of a voluntary cooperation agreement is to provide for a joint city-county task force on narcotics smuggling.
Previously, there was a prohibition against any law enforcement agency receiving reimbursement from any other law enforcement agency under a voluntary cooperation agreement.[8] This prohibition was removed, however, and now compensation and reimbursement for services rendered by an agency are authorized by the act.[9]
The act recognizes that law enforcement assistance may cross jurisdictional lines under a mutual aid agreement. In further recognition of the extraterritorial exercise of law enforcement, section 23.127, Florida Statutes, provides:
(1) Any employee of any Florida law enforcement agency who renders aid outside the employee's jurisdiction but inside this state pursuant to the written agreement entered under this part has the same powers, duties, rights, privileges, and immunities as if the employee was performing duties inside the employee's jurisdiction. . . .
* * *
(3) The privileges and immunities from liability, exemption from laws, ordinances, and rules, and pension, insurance, relief, disability, workers' compensation, salary, death, and other benefits that apply to the activity of an employee of an agency when performing the employee's duties within the territorial limits of the employee's agency apply to the employee to the same degree, manner, and extent while engaged in the performance of the employees' duties extraterritorially under the provisions of the mutual aid agreement. This section applies to paid, volunteer, and auxiliary employees.
A mutual aid agreement entered into pursuant to Part I, Chapter 23, Florida Statutes, would not appear to require a transfer of power from one municipality to another. Rather, it is a contract with ultimate supervision of the law enforcement power remaining in the municipality receiving the assistance.[10] As previously concluded by this office, police officers serving outside their jurisdiction pursuant to the Mutual Aid Act have extraterritorial law enforcement power to render aid in the jurisdiction they are called to assist, without the necessity of being deputized by the governing body of the jurisdiction assisted.[11]
Use of a mutual aid agreement would appear to be limited in its scope and would not contemplate a complete assumption of law enforcement services by an assisting law enforcement agency. As recognized by the act itself, the use of mutual aid agreements should more appropriately be confined to specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other. In instances where a municipality has no police department and seeks to contract for a full complement of law enforcement services, the municipality may contract with the sheriff whose jurisdiction includes the city.[12]
Accordingly, it would appear that the City of Edgewater may not contract with another municipality to assume all law enforcement services for the municipality by a mutual aid agreement entered into under Part I, Chapter 23, Florida Statutes. In instances where a municipality has no police department and seeks to contract for law enforcement services, the municipality may contract with the sheriff whose jurisdiction includes the city.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, s. 166.021(3)(a), Fla. Stat. (1995), stating that municipal home rule powers do not extend to "[t]he subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution[.]"
[2] See, Ramer v. State, 530 So.2d 915 (Fla. 1988) (city police officer lacked authority to seize vehicle on private property outside city limits); Collins v. State, 143 So.2d 700 (Fla. 2d DCA 1962), cert. denied, 148 So.2d 280 (Fla. 1962).
[3] Section 901.25(2), Fla. Stat., provides:
Any duly authorized state, county, or municipal arresting officer is authorized to arrest a person outside his jurisdiction when in fresh pursuit. Such officer shall have the same authority to arrest and hold such person in custody outside his jurisdiction, subject to the limitations hereafter set forth, as has any authorized arresting state, county, or municipal officer of this state to arrest and hold in custody a person not arrested in fresh pursuit.
[4] See, s. 901.252, Fla. Stat. (1995).
[5] See, Op. Att'y Gen. Fla. 90-77 (1990) (dual referenda required to transfer ultimate responsibility for supervising law enforcement services from the Port Everglades Authority to a municipality; however, general or special law is required before municipality may exercise extraterritorial law enforcement powers on behalf of the authority outside its municipal boundaries) and 82-52 (1982) (cross swearing of police officers in neighboring municipalities to perform law enforcement services in each other's jurisdiction must comply with ss. 2[c] and [4], Art. VIII, State Const.; also recognizing the use of Part I, Ch. 23, Fla. Stat., to allow extraterritorial exercise of law enforcement services by municipalities pursuant to a mutual aid agreement).
[6] Section 23.121(1)(a), Fla. Stat. (1995).
[7] Section 23.121(1)(g), Fla. Stat. (1995).
[8] See, s. 23.1225(1), Fla. Stat. (1991).
[9] Section 23.1225(1), Fla. Stat. (1991), was amended by s. 3, Ch. 92-165, Laws of Florida, to delete the reimbursement proscription and add the present language allowing compensation and reimbursement to assisting agencies.
[10] See, Op. Att'y Gen. Fla. 90-84 (1990).
[11] See, Op. Att'y Gen. Fla. 82-52 (1982) (law enforcement services provided pursuant to s. 23.1225[1], Fla. Stat., do not require "cross swearing" of officers).
[12] Cf., Op. Att'y Gen. Fla. 93-93 (1993) (town may contract for provision of the town's law enforcement functions by the sheriff without referendum approval where town retains authority to cancel the contract and has not abrogated its ultimate responsibility to supervise the law enforcement functions).