Chief James P. Kelly President, Palm Beach County Association of Chiefs of Police, Inc. 3330 Forest Hill Boulevard, Suite B-121 West Palm Beach, Florida 33406-5869
Dear Chief Kelly:
You state that you and the several municipal chiefs of police in Palm Beach County are considering entering into a mutual aid agreement. On behalf of the chiefs of police, you ask the following question:
May municipal law enforcement agencies enter into a mutual aid agreement providing that if a municipal police officer is in another participating agency's jurisdiction and observes a crime of violence or a felony, the officer may exercise authority as a sworn law enforcement officer?
In sum:
Municipal law enforcement agencies may enter into a mutual aid agreement providing that if a municipal police officer is in another participating agency's jurisdiction and observes a crime of violence or a felony, the officer may exercise authority as a sworn law enforcement officer.
According to your letter, the Palm Beach County Association of Chiefs of Police has reviewed the model mutual aid agreements from the Florida Department of Law Enforcement. You state that the association has used the combined operational assistance and voluntary cooperation version, except that the association has modified one of the sections to read as follows:
"Should a sworn law enforcement officer be in another subscribed agency's jurisdiction for matters of a routine nature, such as traveling through the jurisdiction on routine business, attending a meeting or going to or from work, or transporting a prisoner, and a violation of Florida Statutes occurs, which is a crime of violence or felony of any nature, in the presence of said party, representing his/her respective agency, he/she shall be empowered to render enforcement assistance and act in accordance with the law. Should enforcement action be taken, said party shall notify the agency having normal jurisdiction and upon the latter's arrival, turn the situation over to them and offer any assistance requested including, but not limited to, a follow-up written report documenting the event and the actions taken. This provision so prescribed in this paragraph is not intended to grant general authority to conduct investigations, serve warrants and/or subpoenas or to respond without request to emergencies already being addressed by the agency of normal jurisdiction, but is intended to address critical, life-threatening or public safety situations, prevent bodily injury to citizens, or secure apprehension of criminals whom the law enforcement officer may encounter."
The State Attorney for your judicial circuit, however, has expressed his concern that the above language goes beyond the scope of the Florida Mutual Aid Act in that it authorizes an officer to act as a law enforcement officer outside the officer's jurisdiction without a specific request by the agency having jurisdiction. You, therefore, request clarification from this office.
The powers of a municipality, including its police powers, generally cease at the municipal boundaries and cannot, absent statutory authorization, be exercised outside the city's limits.[1] This office, for example, has stated that a municipal police officer has no power or authority to act as a police officer in any part of the state outside the corporate limits of the city where the officer is employed and any such action by the officer would be subject to review as if it were the action of a private citizen.[2]
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," creates a state law enforcement mutual aid plan that provides for the coordination of law enforcement planning, operations, and mutual aid across jurisdictional lines.[3] To carry out this plan, the Legislature has found it necessary to "allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[4] Section 23.127(1), Florida Statutes, provides that law enforcement officers rendering aid outside their jurisdiction but within the state pursuant to a mutual aid agreement have the same powers as if they were performing such duties within their jurisdiction.
Section 23.1225(1), Florida Statutes (1996 Supplement), provides that the term "mutual aid agreement" for purposes of the act refers to one of the following types of agreements:
"(a) A voluntary cooperation written agreement between two or more law enforcement agencies or between one or more law enforcement agencies and a school board that employs school safety officers which permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. Examples of law enforcement activities that may be addressed in a voluntary cooperation written agreement include establishing a joint city-county task force on narcotics smuggling or authorizing school safety officers to enforce laws in an area within 1,000 feet of a school or school board property.
(b) A requested operational assistance written agreement between two or more law enforcement agencies or between one or more law enforcement agencies and a school board that employs school safety officers for the rendering of assistance in a law enforcement emergency. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. An example of the use of a requested operational assistance written agreement is to meet a request for assistance due to a civil disturbance or other emergency as defined in 252.34.
(c) A combination of the agreements described in paragraphs (a) and (b)."
This office has stated that the use of a mutual aid agreement does not contemplate a complete assumption of law enforcement services by an assisting law enforcement agency but is more limited in scope.[5] As recognized by the act itself, the use of mutual aid agreements should more appropriately be confined to specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other.
The proposed agreement in the instant inquiry seeks to establish cooperation and assistance of a primarily routine law enforcement nature across jurisdictional lines as provided in section23.1225(1)(a), Florida Statutes (1996 Supplement).[6] While the statute requires that the agreement specify "the procedures for requesting and for authorizing assistance," the proposed agreement itself appears to constitute the request for and authorization of the type of assistance specified therein. It specifies the instances in which the law enforcement officer may act, i.e., when the officer personally observes a felony or crime of violence and sets forth the procedures to be followed by requiring the officer to notify the agency having normal jurisdiction and to turn over the situation to that agency upon the arrival of its officers.
This office has been advised by the Florida Department of Law Enforcement that such provisions are commonly used in mutual aid agreements throughout the state.[7] Moreover, the model agreement developed by the Florida Department of Law Enforcement contains language permitting a sworn law enforcement officer in another participating agency's jurisdiction who witnesses a violation of Florida law to render enforcement assistance.[8] Like the proposed agreement in the instant inquiry, the model agreement requires the officer to notify the agency having normal jurisdiction and upon the latter's arrival, to turn over the situation and offer any assistance required. Unlike the model agreement, however, the proposed agreement limits an officer's authority to act on felonies and crimes of violence rather than any violation of Florida Law.
In light of the above, I am of the opinion that municipal law enforcement agencies may enter into a mutual aid agreement that provides that if a municipal police officer is in another subscriber's jurisdiction and observes a crime of violence or felony, the officer may exercise authority as a sworn law enforcement officer.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, e.g., Ramer v. State, 530 So.2d 915 (Fla. 1988) (city police officer lacked authority to seize vehicle on private property outside city limits); Collins v. State, 143 So.2d 700
(Fla. 2d DCA 1962), cert. denied, 148 So.2d 280 (Fla. 1962). Cf., Art. VIII, s. 2(c), Fla. Const., providing that municipalities may exercise extraterritorial powers only if authorized by general or special law; and s. 166.021(3)(a), Fla. Stat., stating that municipal home rule powers do not extend to "the subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution[.]"
[2] See, Op. Att'y Gen. Fla. 71-72 (1971). But see, s.901.25(2), Fla. Stat. (municipal police officer authorized to make arrests outside officer's jurisdiction, if in fresh pursuit); s.901.252, Fla. Stat. (municipal police officer may patrol municipally-owned property located outside municipal boundaries and when probable cause to believe person has committed or is committing a violation of law on such property or facilities, the officer may take the person into custody).
[3] Section 23.121(1)(a), Fla. Stat.
[4] Section 23.121(1)(g), Fla. Stat. And see, s. 23.121(1), Fla. Stat., stating the need for the Florida Mutual Aid Act:
"Because of the existing and continuing possibility of the occurrence of natural or manmade disasters or emergencies and other major law enforcement problems, including those that cross jurisdictional lines, and in order to ensure that preparations of this state will be adequate to deal with such activity, protect the public peace and safety, and preserve the lives and property of the people of this state[.]"
[5] Attorney General Opinion 96-78 (1996). And see, Op. Att'y Gen. Fla. 90-84 (1990).
[6] See, Op. Att'y Gen. Fla. 82-52 (1982) (law enforcement services provided pursuant to mutual aid agreement do not require "cross swearing" of officers); Op. Att'y Gen. Fla. 72-178 (1972).
[7] See, s. 23.1225(4), Fla. Stat. (1996 Supp.), stating that a copy of a mutual aid agreement must be filed with the Department of Law Enforcement within 14 days after it is signed.
[8] Combined Voluntary Cooperation and Operational Assistance Mutual Aid Agreement, s. III, dated February 1997.