Mr. Robert J. Antonello Winter Haven City Attorney Post Office Box 7692 Winter Haven, Florida 33883-7692
Dear Mr. Antonello:
On behalf of the Winter Haven City Commission, you ask substantially the following question:
May a municipal law enforcement agency enter into a mutual aid agreement that permits a municipal police officer to exercise authority as a sworn law enforcement officer by making arrests and conducting searches and seizures while in another participating agency's jurisdiction?
In sum:
Municipal law enforcement agencies may enter into a mutual aid agreement that permits a municipal police officer to exercise authority as a sworn law enforcement officer by making arrests and conducting searches and seizures while in another participating agency's jurisdiction.
The powers of a municipality, including its police powers, generally cease at the municipal boundaries and cannot, absent statutory authorization, be exercised outside the city's limits.[1] Thus, in the absence of statutory authorization, a municipal police officer has no power or authority to act as a police officer in any part of the state outside the corporate limits of the city in which the officer is employed, and any such action by the officer would be subject to review as if it were the action of a private citizen.[2]
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," constitutes such statutory authorization by creating a state law enforcement mutual aid plan that provides for the coordination of law enforcement planning, operations, and mutual aid across jurisdictional lines.[3] To carry out this plan, the Legislature has found it necessary to "allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[4] Section 23.127(1), Florida Statutes, expressly provides that law enforcement officers rendering aid outside their jurisdiction but within the state pursuant to a mutual aid agreement have the same powers as if they were performing such duties within their jurisdiction.
Section 23.1225(1), Florida Statutes, provides that the term "mutual aid agreement" for purposes of the act refers to one of the following types of agreements:
"(a) A voluntary cooperation written agreement between two or more law enforcement agencies, or between one or more law enforcement agencies and either a school board that employs school safety officers or a state university that employs or appoints university police officers in accordance with s. 240.268, which agreement permits voluntary cooperation and assistance of a routine lawenforcement nature across jurisdictional lines. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. Examples of law enforcement activities that may be addressed in a voluntary cooperation written agreement include establishing a joint city-county task force on narcotics smuggling or authorizing school safety officers to enforce laws in an area within 1,000 feet of a school or school board property.
(b) A requested operational assistance written agreement between two or more law enforcement agencies, or between one or more law enforcement agencies and either a school board that employs school safety officers or a state university that employs or appoints university police officers in accordance with s. 240.268, which agreement is for the rendering of assistance in a law enforcement emergency. The agreement must specify the nature of the law enforcement assistance to be rendered, the agency or entity that shall bear any liability arising from acts undertaken under the agreement, the procedures for requesting and for authorizing assistance, the agency or entity that has command and supervisory responsibility, a time limit for the agreement, the amount of any compensation or reimbursement to the assisting agency or entity, and any other terms and conditions necessary to give it effect. An example of the use of a requested operational assistance written agreement is to meet a request for assistance due to a civil disturbance or other emergency as defined in 252.34.
(c) A combination of the agreements described in paragraphs (a) and (b)." (e.s.)
This office has stated that the use of a mutual aid agreement does not contemplate a complete assumption of law enforcement services by an assisting law enforcement agency but is more limited in scope.[5] As recognized by the act itself, the use of mutual aid agreements should more appropriately be confined to specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other.
In Attorney General Opinion 97-45, this office considered a proposed mutual aid agreement that sought to establish cooperation and assistance of a primarily routine law enforcement nature across jurisdictional lines as provided in section 23.1225(1)(a), Florida Statutes.[6] The agreement authorized a municipal police officer in a subscriber's jurisdiction who observed a crime of violence or felony to exercise authority as a sworn law enforcement officer. While the statute requires that the agreement specify "the procedures for requesting and for authorizing assistance," the proposed agreement itself constituted the request for, and authorization of, the type of assistance specified therein. Noting that such provisions are commonly used in mutual aid agreements, this office concluded that the mutual aid agreement was permissible under Part I, Chapter 23, Florida Statutes.
As in the mutual aid agreement considered in Attorney General Opinion 97-45, the language of your proposed mutual aid agreement provides for relinquishment of the scene and person arrested to an officer from the agency having jurisdiction. While the agreement applies not only to felonies but to misdemeanors involving breach of the peace, DUIs and reckless driving as well, the inclusion of these offenses would not, in my opinion, remove the agreement from the parameters of Part I, Chapter 23, Florida Statutes. As noted in Attorney General Opinion 97-45, the model agreement developed by the Florida Department of Law Enforcement contains language permitting a sworn law enforcement officer in another participating agency's jurisdiction who witnesses any violation of Florida law to render enforcement assistance.[7]
The other two provisions in question authorize a law enforcement officer conducting an investigation within his jurisdiction to make an arrest or conduct searches and seizures related to the investigation in a cooperating agency's jurisdiction, provided that notice of the officer's intention is given to the on-duty communications supervisor for the cooperating agency in sufficient time to allow the cooperating agency to participate unless exigent circumstances exist. In that event, notice must be given immediately thereafter.
Section 23.1225(1)(a), Florida Statutes, authorizes a voluntary written agreement that permits voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines. The provisions in question appear to be provisions of a cooperative nature relating to routine law enforcement. As noted above, the cooperating agency must be contacted prior to the law enforcement officer exercising such authority in its jurisdiction, unless exigent circumstances exist, in which event notice is given immediately afterwards. This office has been advised by the Department of Law Enforcement that such provisions are not uncommon in mutual aid agreements.[8] While such language is frequently utilized in mutual aid agreements providing for task forces, it is not necessarily limited to such purposes.
Accordingly, in light of the above, I am of the view that a municipal law enforcement agency may enter into a mutual aid agreement that permits a municipal police officer to exercise authority as a sworn law enforcement officer by making arrests and conducting searches and seizures while in another participating agency's jurisdiction.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, e.g., Ramer v. State, 530 So.2d 915 (Fla. 1988) (city police officer lacked authority to seize vehicle on private property outside city limits); Collins v. State, 143 So.2d 700
(Fla. 2d DCA 1962), cert. denied, 148 So.2d 280 (Fla. 1962). Cf., Art. VIII, s. 2(c), Fla. Const., providing that municipalities may exercise extraterritorial powers only if authorized by general or special law; and s. 166.021(3)(a), Fla. Stat., stating that municipal home rule powers do not extend to "[t]he subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution[.]"
[2] See, Op. Att'y Gen. Fla. 71-72 (1971). But see, s.901.25(2), Fla. Stat. (municipal police officer authorized to make arrests outside officer's jurisdiction, if in fresh pursuit); s.901.252, Fla. Stat. (municipal police officer may patrol municipally-owned property located outside municipal boundaries and when probable cause to believe person has committed or is committing a violation of law on such property or facilities, the officer may take the person into custody).
[3] Section 23.121(1)(a), Fla. Stat.
[4] Section 23.121(1)(g), Fla. Stat. And see, s. 23.121(1), Fla. Stat., stating the need for the Florida Mutual Aid Act:
"Because of the existing and continuing possibility of the occurrence of natural or manmade disasters or emergencies and other major law enforcement problems, including those that cross jurisdictional lines, and in order to ensure that preparations of this state will be adequate to deal with such activity, protect the public peace and safety, and preserve the lives and property of the people of the state[.]"
[5] Attorney General Opinion 96-78 (1996). And see, Op. Att'y Gen. Fla. 90-84 (1990).
[6] See, Op. Att'y Gen. Fla. 82-52 (1982) (law enforcement services provided pursuant to mutual aid agreement do not require "cross swearing" of officers); Op. Att'y Gen. Fla. 72-178 (1972).
[7] Combined Voluntary Cooperation and Operational Assistance Mutual Aid Agreement, s. III, dated February 1997.
[8] Cf., s. 23.1225(4), Fla. Stat., requiring that a copy of a mutual aid agreement be filed with the Department of Law Enforcement within 14 days after it is signed.