Ms. Phyllis M. Rosier Attorney for Town of Glen St. Mary 33 McIver East Macclenny, Florida 32063
Dear Ms. Rosier:
You have asked substantially the following question:
May the Town of Glen St. Mary enter into an interlocal agreement with the county to have all code enforcement matters reviewed by the county's code enforcement board as an alternate means of enforcing its codes?
In sum:
The Town of Glen St. Mary may enter into an interlocal agreement with the county to have code enforcement matters reviewed by the county's code enforcement board as an alternate means of enforcing its codes.
You state that the Town of Glen St. Mary is contemplating entering into an interlocal agreement with Baker County under which the town would refer code enforcement matters to the county's code enforcement board. As a small municipality with a part-time governing body and clerk, the town lacks sufficient staff, resources, or population to support its own code enforcement board. In the interest of furthering this proposed plan and to accommodate ease of enforcement, the town has established codes that are uniform with those of Baker County.
Section 162.03, Florida Statutes, authorizes municipalities to create or abolish by ordinance local government code enforcement boards as provided in Part I, Chapter 162, Florida Statutes. Municipalities may, by ordinance, adopt an alternate code enforcement system which gives code enforcement boards or special masters designated by the local governing body, or both, the authority to hold hearings and assess fines against violators of the municipal codes and ordinances.[1] The Legislature has stated its intent, however, in enacting Part I, Chapter 162, Florida Statutes, as providing an "additional or supplemental means of obtaining compliance with local codes. Nothing contained in ss.162.01-162.12 shall prohibit a local governing body from enforcing its codes by any other means."[2]
In Part II, Chapter 162, Florida Statutes, municipalities are allowed to designate employees or agents as code enforcement officers whose duty it is to enforce codes and ordinances enacted by the municipality.[3] Again, the Legislature states that the provisions in section 162.21, Florida Statutes, authorizing the appointment of code enforcement officers, are "additional and supplemental" means of enforcing county or municipal codes or ordinances and may be used for the enforcement of any code or ordinance, or for the enforcement of all codes and ordinances. "Nothing contained in this section shall prohibit a county or municipality from enforcing its codes or ordinances by any other means."[4]
This office has historically found that a municipality or county choosing to create a code enforcement board under Chapter 162, Florida Statutes, is bound by the requirements or restrictions contained therein.[5] A Florida court has similarly concluded that once a city has opted for a code enforcement board under Chapter 162, it is prohibited from enforcing its ordinances in any other manner.[6]
The plain language of Parts I and II, Chapter 162, Florida Statutes, however, allows a municipality to enforce its codes by other means. Moreover, a recent decision of the Fourth District Court of Appeal, in Goodman v. County Court in Broward County,Florida,[7] concluded that the creation of a code enforcement board and the assignment to it of the enforcement of housing code violations did not preclude enforcement of municipal code violations in another manner, such as bringing a charge in county court.
Section 162.22, Florida Statutes, in pertinent part, states:
"The governing body of a municipality may designate the enforcement methods and penalties to be imposed for the violation of ordinances adopted by the municipality. These enforcement methods may include, but are not limited to, the issuance of a citation, a summons, or a notice to appear in county court or arrest for violation of municipal ordinances as provided for in chapter 901."
Thus, Chapter 162, Florida Statutes, recognizes the authority of a municipality to use alternate methods for the enforcement of its ordinances and codes.
Part I, Chapter 163, Florida Statutes, the "Florida Interlocal Cooperation Act of 1969," was enacted to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.[8]
The act authorizes any two public agencies of this state, including municipalities and counties,[9] to exercise jointly "any power, privilege, or authority which such agencies share in common and which each might exercise separately."[10] Such a joint exercise of power pursuant to this act must be undertaken by executing a contract in the form of an interlocal agreement.[11]
The county's authority to enforce codes would be coextensive with the boundaries of the county and, as a noncharter county, such codes or ordinances would be enforceable within the incorporated areas of the county to the extent the county ordinance or code does not conflict with a municipal ordinance.[12] However, the authority of the city to enforce its codes would be limited to the boundaries of the municipality.[13]
Accordingly, it is my opinion that the Town of Glen St. Mary may enter into an interlocal agreement to have the county code enforcement board enforce the town's codes as an alternate means of code enforcement pursuant to Chapter 162, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 162.03(2), Fla. Stat.
[2] Section 162.13, Fla. Stat.
[3] Section 162.21(1), Fla. Stat.
[4] Section 162.21(8), Fla. Stat.
[5] See, Ops. Att'y Gen. Fla. 87-24 (1987), 86-10 (1986), 85-84 (1985), 85-27 (1985) (municipality or its governing body derives neither delegated authority from Ch. 162, Fla. Stat., nor any home rule power from s. 2(b), Art. VIII, State Const., to enforce its codes in any manner other than as provided in Ch. 162).
[6] City of Tampa v. Braxton, 616 So.2d 554, 556 (Fla. 2d DCA 1993).
[7] 711 So.2d 587 (Fla. 4th DCA 1998), rev. den.,727 So.2d 905 (Fla. 1998).
[8] Section 163.01(2), Fla. Stat.
[9] Section 163.01(3)(b), Fla. Stat., defines "Public agency" to mean:
"a political subdivision, agency, or officer of this state or of any state of the United States, including, but not limited to, state government, county, city, school district, single and multipurpose special district, single and multipurpose public authority, metropolitan or consolidated government, an independently elected county officer, any agency of the United States Government, and any similar entity of any other state of the United States." (e.s.)
[10] Section 163.01(4), Fla. Stat. And see, e.g., Op. Att'y Gen. Fla. 83-46 (1983), concluding that a group of county property appraisers may enter into an interlocal agreement for the joint provision and utilization of data processing and computer services.
[11] Section 163.01(5), Fla. Stat.
[12] See, Op. Att'y Gen. Fla. 85-48 (1985) (absent a conflicting municipal ordinance which would constitutionally limit the effect of a countywide restriction, the county ordinance would be applicable throughout the county). And see, Art. VIII, s. 1(f), Fla. Const., providing:
"Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict."
[13] See, Ramer v. State, 530 So.2d 915 (Fla. 1988) (city police officer lacked authority to seize vehicle on private property outside city limits); Collins v. State, 143 So.2d 700
(Fla. 2d DCA 1962), cert. den., 148 So.2d 280 (Fla. 1962). Cf., Art. VIII, s. 2(c), Fla. Const., providing that municipalities may exercise extraterritorial powers only if authorized by general or special law; and s. 166.021(3)(a), Fla. Stat., stating that municipal home rule powers do not extend to "the subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution." (e.s.)