Mr. Sid Klein Chief of Police City of Clearwater Post Office Box 4748 Clearwater, Florida 33758-4748
Dear Chief Klein:
You ask substantially the following questions:
1. May the City of Clearwater and Pinellas County enter into a mutual aid agreement authorizing a city police officer to enforce traffic laws and conduct accident investigations on streets located in the unincorporated areas of the county?
2. May the various municipalities within Pinellas County enter into mutual aid agreements with one another and the sheriff to enforce traffic laws and conduct accident investigations within each other's jurisdictions?
3. Pursuant to section 166.0495, Florida Statutes, may the City of Clearwater and an adjoining municipality enter into an interlocal agreement allowing officers on routine patrol to exercise traffic enforcement authority and conduct investigations in the adjoining municipality's jurisdiction?
In sum:
A municipality or several municipalities may enter into a mutual aid agreement with the county and each other to authorize municipal police officers to exercise traffic enforcement authority and to conduct accident investigations within the unincorporated areas of the county and within each other's jurisdictions, where the parties set forth in the agreement the agency or entity with ultimate supervision of such law enforcement activities.
You state that the City of Clearwater is one of twenty-four municipalities within Pinellas County, twelve of which have their own police departments. A map of the configuration of the cities shows streets running through municipal boundaries, through unincorporated areas of the county, and then back into a city; or, in some instances, streets may border a city, but lie within an adjoining municipality. Due to the jurisdictional changes that may occur several times on one street, enforcement of traffic laws and accident investigations may be uneven and somewhat burdensome. You are seeking a method whereby a municipal police department would be able to enforce laws uniformly throughout this otherwise patchwork of jurisdictions in a small area.
The information you have provided indicates that the current mutual aid agreement among law enforcement agencies in Pinellas County does not allow municipal police officers to make traffic stops outside their jurisdiction, unless the suspect has committed a felony or the officers observe the commission of a misdemeanor involving a breach of the peace. Officers have no authority to conduct and complete accident investigations outside their jurisdictions. Moreover, in instances where an officer has stopped a suspect for a felony or misdemeanor involving a breach of the peace, the officer must relinquish control to the first available officer from the jurisdiction in which the incident occurred, unless remaining at the scene would expose the officer or person arrested to imminent physical danger.
A municipality's powers generally end at its boundaries and may not, absent statutory authority, be exercised beyond the city's limits.[1]
Absent statutory authority, therefore, a municipal police officer has no power to act as a police officer in any part of the county or state outside the corporate limit in which the officer is employed; any such action by an officer would be subject to review as if it had been taken by a private citizen.[2]
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," is the statutory authorization that creates a state law enforcement mutual aid plan providing for the coordination of law enforcement planning, operations, and mutual aid across jurisdictional lines.[3] The Legislature has found it necessary "[t]o allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[4] The act specifically recognizes that any employee of a law enforcement agency rendering aid outside the employee's jurisdiction but inside the State of Florida pursuant to a written agreement entered into pursuant to the act "has the same powers, duties, rights, privileges, and immunities as if the employee was performing duties inside the employee's jurisdiction."[5]
Section 23.1225, Florida Statutes, defines the term "mutual aid agreement" to include a written agreement between two or more law enforcement agencies permitting voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines.[6] The agreement must specify the nature of law enforcement assistance that will be rendered, the agency or entity that will assume liability arising from acts performed under the agreement, the procedures for requesting and authorizing assistance, the agency or entity with command or supervisory authority, the duration of the agreement, any compensation or reimbursement due an assisting agency, and any other terms and conditions necessary to give the agreement effect.[7] The act gives examples of activities that may be addressed in a voluntary cooperation agreement, including the establishment of a joint-county traffic enforcement task force.[8]
This office has stated that the use of mutual aid agreements does not contemplate a complete assumption of law enforcement services by an assisting agency, but is more limited in scope.[9] The act itself recognizes that mutual aid agreements should be used for specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other. A mutual aid agreement does not require the transfer of law enforcement powers from one municipality to another, but is a contract with the supervision and ultimate control over such law enforcement activities prescribed in the written agreement.[10]
Practically, in this instance, a law enforcement agency from one jurisdiction could not exercise traffic control or investigate a traffic offense in another jurisdiction without informing the other jurisdiction of its actions. Such a requirement would necessarily need to be addressed in the mutual aid agreement.
Accordingly, it is my opinion that a city or cities within a county may enter into a mutual aid agreement with each other and the county to carry out traffic enforcement and to conduct investigations of traffic accidents in the various jurisdictions, where the mutual aid agreement prescribes the agency or entity with supervisory powers over such law enforcement activities.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, e.g., Ramer v. State, 530 So.2d 915 (Fla. 1988) (city police officer lacked specific authority to seize vehicle on private property outside city limits); Collins v. State, 143 So.2d 700 (Fla. 2nd DCA 1962), cert. denied, 148 So.2d 280 (Fla. 1962). Cf., Art. VIII, s. 2(c), Fla. Const., providing that municipalities may exercise extraterritorial powers only if authorized by general or special law; and s. 166.021(3)(a), Fla. Stat., stating that municipal home rule powers do not extend to "the subjects of annexation, merger, and exercise of extra-territorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution."
[2] See, Ops. Att'y Gen. Fla. 99-22 (1999) and 71-22 (1971). But see, s. 901.25(2), Fla. Stat. (municipal police officer authorized to make arrests outside officer's jurisdiction if in fresh pursuit); s. 901.252, Fla. Stat. (municipal police officer may patrol municipally-owned or leased property and facilities located outside jurisdictional limits of the municipality and, when there is probable cause to believe a person has committed or is committing a violation of state law or of a county or municipal ordinance on such property or facilities, may take the person into custody and detain the person in a reasonable manner and for a reasonable time; the law enforcement officer employed by the municipality shall immediately call a law enforcement officer with jurisdiction over the property or facility on which the violation occurred after detaining the person).
[3] Section 23.121(1)(a), Fla. Stat.
[4] Section 23.121(1)(g), Fla. Stat.
[5] Section 23.127(1), Fla. Stat.
[6] Section 23.1225(1)(a), Fla. Stat.
[7] Id.
[8] Section 23.1225(1)(a), Fla. Stat. Section 23.1225(1)(b), Fla. Stat., defines a "mutual aid agreement" as "[a] requested operational assistance written agreement between two or more law enforcement agencies . . . for the rendering of assistance in a law enforcement emergency[,]" with the same specification requirements set forth in subsection23.1225(1)(a), Fla. Stat. The example given for which a mutual aid agreement may be used is to meet a request for assistance due to a civil disturbance or other emergency as defined in s. 252.34(3) [any occurrence, or threat thereof, whether natural, technological, or manmade, in war or in peace, which results or may result in substantial injury or harm to the population or substantial damage to or loss of property].
[9] See, Op. Att'y Gen. Fla. 96-78 (1996) (city may not use mutual aid agreement for complete assumption of law enforcement services in an adjoining municipality; where municipality has no police department and seeks to contract for law enforcement services, it may contract with the sheriff whose jurisdiction includes the municipality).
[10] See, s. 23.1225(1)(a), Fla. Stat., supra, in pertinent part, stating, "[t]he agreement must specify . . . the agency or entity that has command and supervisory responsibility. . . ." Cf., Op. Att'y Gen. Fla. 90-84 (1990), issued prior to the amendment of section 23.1225, Fla. Stat (1991), by s. 3, Ch. 92-165, Laws of Florida, adding the language requiring designation of the agency or entity with ultimate command and supervision.