Chief Thomas A. Magill Hallandale Beach Police Department 400 South Federal Highway Hallandale Beach, Florida 33009-6433
Dear Chief Magill:
You ask substantially the following question:
May the City of Hallandale Beach provide police services to the City of Westpark?
According to your letter, the new City of Westpark has inquired whether the City of Hallandale Beach could provide police services to Westpark. You are aware of Attorney General Opinion 96-78, which concluded that there was no statutory authority for the complete transfer of law enforcement services from one municipality to another.
As that opinion recognized, a municipality's powers generally end at its boundaries and cannot, absent statutory authority, be exercised beyond the city's limits.[1] Thus, absent statutory authority, a municipal police officer has no power to act as a police officer in any part of the county or state outside the corporate limit in which the officer is employed.[2]
Part I, Chapter 23, Florida Statutes, the "Florida Mutual Aid Act," is the statutory authorization that creates a state law enforcement mutual aid plan providing for the coordination of law enforcement planning, operations, and mutual aid across jurisdictional lines. The Legislature has determined that it is necessary "[t]o allow a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[3]
Section 23.1225, Florida Statutes, defines the term "mutual aid agreement" to include a written agreement between two or more law enforcement agencies permitting voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines.[4] The agreement must specify the nature of law enforcement assistance that will be rendered, the agency or entity that will assume liability arising from acts performed under the agreement, the procedures for requesting and authorizing assistance, the agency or entity with command or supervisory authority, the duration of the agreement, any compensation or reimbursement due an assisting agency, and any other terms and conditions necessary to give the agreement effect.[5] The act gives examples of activities that may be addressed in a voluntary cooperation agreement, including the establishment of a joint city-county traffic enforcement task force.[6]
This office, however, has stated that mutual aid agreements do not contemplate a complete assumption of law enforcement services by an assisting agency, but are more limited in scope. The act itself recognizes that mutual aid agreements should be used for specific law enforcement activities in which two or more law enforcement agencies jointly provide assistance to each other. A mutual aid agreement does not require the transfer of law enforcement powers from one municipality to another, but is a contract with the supervision and ultimate control over such law enforcement activities prescribed in the written agreement.[7]
Thus, this office stated in Attorney General Opinion 96-78 that a city may not use a mutual aid agreement for complete assumption of law enforcement services in an adjoining municipality. In those instances where a municipality has no police department and seeks to contract for law enforcement services, this office has stated that a municipality may contract with the sheriff whose jurisdiction includes the municipality.[8] While the Florida Mutual Aid Act has been amended several times since Attorney General Opinion 96-78 was issued, such amendments do not alter the conclusions reached in that opinion.[9]
Accordingly, I am of the opinion that while the City of Westpark and the City of Hallandale Beach may enter into a mutual aid agreement for the voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines or for the rendering of assistance in a law enforcement emergency,[10] the provisions of Part I, Ch. 23, Florida Statutes, may not be used for the City of Hallandale Beach to assume the operation of all law enforcement functions within the City of Westpark.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See, e.g., Ramer v. State, 530 So.2d 915 (Fla. 1988) (city police officer lacked specific authority to seize vehicle on private property outside city limits); Collins v. State, 143 So.2d 700 (Fla. 2nd DCA 1962), cert. denied, 148 So.2d 280 (Fla. 1962). Cf. Art. VIII, s. 2(c), Fla. Const., providing that municipalities may exercise extraterritorial powers only if authorized by general or special law; and s. 166.021(3)(a), Fla. Stat., stating that municipal home rule powers do not extend to "the subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant to s. 2(c), Art. VIII of the State Constitution."
[2] See Ops. Att'y Gen. Fla. 99-22 (1999) and 71-22 (1971). But see s.901.25(2), Fla. Stat. (municipal police officer authorized to make arrests outside officer's jurisdiction if in fresh pursuit); s. 901.252, Fla. Stat. (municipal police officer may patrol municipally-owned or leased property and facilities located outside jurisdictional limits of the municipality and, when there is probable cause to believe a person has committed or is committing a violation of state law or of a county or municipal ordinance on such property or facilities, may take the person into custody and detain the person in a reasonable manner and for a reasonable time; the law enforcement officer employed by the municipality shall immediately call a law enforcement officer with jurisdiction over the property or facility on which the violation occurred after detaining the person).
[3] Section 23.121(1)(g), Fla. Stat.
[4] Section 23.1225(1)(a), Fla. Stat.
[5] Id.
[6] Section 23.1225(1)(a), Fla. Stat. Section 23.1225(1)(b), Fla. Stat., defines a "mutual aid agreement" as "[a] requested operational assistance written agreement between two or more law enforcement agencies . . . for the rendering of assistance in a law enforcement emergency[,]" with the same specification requirements set forth in subsection23.1225(1)(a), Fla. Stat. The example given for which a mutual aid agreement may be used is to meet a request for assistance due to a civil disturbance or other emergency as defined in s. 252.34(3) ("any occurrence, or threat thereof, whether natural, technological, or manmade, in war or in peace, which results or may result in substantial injury or harm to the population or substantial damage to or loss of property"). A mutual aid agreement may also be a combination of the agreements described in s. 23.1225(1)(a) and (b), Fla. Stat. See s.23.1225(1)(c), Fla. Stat.
[7] See, s. 23.1225(1)(a), Fla. Stat., supra, in pertinent part, stating, "[t]he agreement must specify . . . the agency or entity that has command and supervisory responsibility . . . ."
[8] See Ops. Att'y Gen. Fla. 93-93 (1993) and 96-78 (1996). The sheriff has county-wide jurisdiction. See s. 30.15, Fla. Stat.; and see Op. Att'y Gen. Fla. 71-195 (1971) (respective duties, legal jurisdiction and limitations of a county sheriff and a municipal police department located in the same county have concurrent jurisdiction); and Op. Att'y Gen. Fla. 71-195A (1971) (each agency is authorized to conduct investigations without unnecessary intrusion from the other but two agencies should cooperate with each other, not because they are legally required to, but because it is a necessary condition to the proper performance of each agency's duty to provide police protection).
[9] See s. 1, Ch. 98-183, Laws of Fla. (amending s. 23.1225 to permit mutual aid agreement between law enforcement agency and school district employing school safety officers or university employing university police officers); s. 3, Ch. 00-369, Laws of Fla. (describing additional joint city-county law enforcement activity by voluntary cooperation written agreement); s. 882, Ch. 02-387, Laws of Fla.; s. 1, Ch. 03-153, Laws of Fla. (providing clarification as to agencies that may participate in mutual aid agreements).
[10] See Op. Att'y Gen. Fla. 02-46 (2002), stating that a municipality or several municipalities may enter into a mutual aid agreement with the county and each other to authorize municipal police officers to exercise traffic enforcement authority and to conduct accident investigations within the unincorporated areas of the county and within each other's jurisdictions, where the parties set forth in the agreement the agency or entity with ultimate supervision of such law enforcement activities.