DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL BIONDI,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-1711

[March 21, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit; Broward County; David A. Haimes and Elizabeth Scherer, Judges; L.T. Case No. 14-012725CF10A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

This court must decide if a Pembroke Pines police officer working as a special deputy assigned to the Broward County Sheriff's Office (BSO) Multi-Agency Gang Task Force was authorized to stop appellant in the City of Hollywood for a traffic citation. We hold that the state presented insufficient evidence to demonstrate that the officer had jurisdiction to stop appellant for a traffic citation. Therefore, we reverse.[1]

While driving in the City of Hollywood, a Pembroke Pines police officer stopped appellant for a seatbelt violation. At the time, the officer was working as a special deputy as part of the Broward County Sheriff's Office Multi-Agency Gang Task Force. The officer called for a K-9 unit. Another Pembroke Pines officer, also a member of the gang task force, arrived with his canine partner. Appellant consented to a search of his car, and three capsules of heroin were found in an envelope above appellant's seat.

---

[1] Because we reverse the trial court's order on the motion to suppress, we need not reach the other issues raised in this appeal.

Appellant unsuccessfully moved to suppress the evidence obtained during the traffic stop as the fruits of an unlawful search, arguing that the Pembroke Pines officer lacked jurisdiction to stop his vehicle in the City of Hollywood. During the suppression hearing, the state's evidence consisted solely of the officer's Notice of Appointment to the gang task force[2] and the officer's testimony regarding his understanding of his authority. The state presented no evidence during the suppression hearing or at trial indicating that the stop or the heroin was gang-related.

---

[2] The relevant portions of the Notice of Appointment are reproduced below:

[S]pecial deputy status shall be limited to participating in the Broward County Multi-Agency Gang Task Force (hereinafter referred to as Task Force) with powers of arrest reasonable and necessary to perform undercover investigative work for the Task Force.

The above limited powers of authority are subject to the following conditions:

(1) Special deputy's authority shall not be valid outside the scope of the Task Force.

. . . .

(6) Special deputy shall act in accordance with the Task Force's Standard Operating Procedures (hereinafter referred to as Task Force's SOPs) and the Sheriff's Office of Broward County's Standard Operating Procedures (hereinafter referred to as Sheriff's SOPs). Therefore, before special deputy takes any action utilizing the power received pursuant to this appointment, he/she will be completely familiarized with all of the Task Force and Sheriff's SOPs, rules, regulations, and directives and completely comply with them to the letter.

. . . .

(8) Under no circumstances will the special deputy exercise his/her powers as a special deputy solely to initiate or further an investigation beyond the Task Force unless pursuant to written authorization of the Sheriff or his designee.

. . . .

(9) Special deputy does not possess general authority to act as a law enforcement representative or deputy sheriff of the Sheriff's Office of Broward County.

2

At trial, the evidence showed that appellant had agreed to drive his roommate and a friend down to Miami from his home in Hollywood on the day of the stop. While in Miami, the roommate purchased heroin while appellant waited in his car. During the ride home, the roommate handed appellant an envelope containing three small heroin capsules. Appellant took the envelope and placed it in the driver's side visor above him.

The jury convicted appellant of possession of heroin. Appellant appeals raising several issues, including the denial of his motion to suppress.

In reviewing a ruling on a motion to suppress, we defer to the trial court's factual findings, but review its legal conclusions de novo. *Woods v. State*, 25 So. 3d 669, 670 (Fla. 4th DCA 2010).

The officer's appointment as a special deputy is governed by section 30.09(4)(b), Florida Statutes. That section allows special deputies to be appointed for a number of permitted purposes, including undercover investigative work. § 30.09(4)(b), Fla. Stat. (2016).

Section 30.09 has been interpreted as granting only specific, limited powers to special deputies. *See generally Ramer v. State*, 530 So. 2d 915 (Fla. 1988). In appointing a special deputy, a county sheriff may not grant "unrestrained power" or delegate the sheriff's law enforcement functions to the deputized official. *Id.* at 917-18. Thus, while a special deputy is authorized to use the powers available to a sheriff when performing activities specifically allowed by the statute or as part of the specific program under which he is deputized, he may not exercise that power when he is acting beyond the scope of his role as a special deputy. *See id.* at 917.

Here, the officer's Notice of Appointment to the gang task force specifically stated that the officer was appointed as a special deputy pursuant to section 30.09(4)(b). The Notice of Appointment granted the officer only those "powers of arrest reasonable and necessary to perform undercover investigative work for the Task Force." Thus, the terms of the Notice of Appointment granted members of the gang task force authority to arrest only while doing undercover, task force-related investigations.

The plain language of the Notice of Appointment did not authorize officers to use their special deputy powers "solely to initiate or further an investigation beyond the Task Force unless pursuant to a written authorization of the Sheriff or his designee." Relatedly, the Notice of Appointment provided that a special deputy "does not possess general authority to act as a law enforcement representative or deputy [BSO]

3

sheriff."

The officer did not testify that he was working undercover on the day of the stop. Nor did he testify that he was performing investigative work related to the gang task force when he pulled appellant over for a seatbelt violation. Thus, his stop exceeded the grant of authority in the Notice of Appointment, which was the sole evidence of his authority produced by the state below.

The officer testified that he believed he had the same authority as a BSO officer based on his conversation with a BSO deputy supervising the "sweep day" on the day of the arrest. Significantly, this particular BSO deputy did not testify at trial, nor did the state produce any Standard Operating Procedures that might support the officer's interpretation. That the sweep day activity in question was apparently a prior task force practice does not establish authority. Per the officer's testimony, on monthly sweep days, deputized task force members would meet with a BSO deputy and then divide up to patrol various parts of Broward County. Notably, he did not testify that, on the day he stopped appellant, he was conducting a gang-related "sweep." Instead, he likened that day's sweep to a routine law enforcement patrol.[3]

The officer's interpretation of the task force's authority directly contradicted the Notice of Appointment's provision that task force members do not, in fact, have general BSO law enforcement authority. The plain language of the Notice of Appointment limited the officer's special deputy powers to those related to the gang task force and did not authorize non-task force arrests. Although he was working with the gang task force on the day of the arrest, that work was not within the scope of "undercover investigative work" allowed by the Notice of Appointment.

In sum, the state presented no evidence supplementing the Notice of Appointment's clear terms. The officer's testimony, which conflicted with the Notice of Appointment's limitations on deputy authority, was insufficient to show that he had jurisdiction to make the stop. The lack of evidence demonstrating jurisdiction mandates reversal here.

---

[3] The Office of the Attorney General has concluded that mutual aid agreements wherein law enforcement agencies assist one another "do[] not contemplate a complete assumption of law enforcement services by an assisting agency, but [are] more limited in scope." Op. Att'y Gen. Fla. 02-46 (2002). Although an Attorney General's opinion is not binding on this court, we treat it as "highly persuasive." *State v. Family Bank of Hallandale,* 623 So. 2d 474, 478 (Fla. 1993).

*Reversed.*

CONNER and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**